SUE I. B. O'DAY, Executrix, and E. W. BANISTER, Executor, Appellants, v. JOHN O'DAY et al.; SUE I. B. O'DAY, JOHN O'DAY, JOHN BALDWIN O'DAY, A. C. O'DAY and CATHERINE O'DAY, Appellants; THOMAS K. O'DAY, Respondent.

Division Two, January 31, 1906.

1. **WILLS: Construction: Intention.** A will is always to be construed in accordance with the intent of the testator, as that intention may be ascertained from the entire instrument. Technical rules must yield to the obvious intention of the testator, as gathered from all parts of the will.

2. ————: ————: **Debts: Contribution: Special Bequests: Realty and Personalty: Right of Selection: Residuary Estate.** The will in its first clause directed that all of testator's debts be paid. By the next clause he gave to his wife and two minor

children $75,000 in railroad bonds or the proceeds thereof, and certain real estate. The third clause gave to two other children "one hundred thousand dollars in cash, or at their option they may take all or any part of said amount in notes belonging to me at the time of my death," and also certain real estate. The residue of his estate he gave in equal parts to his wife and said four children. *Held*, that, it being clearly ascertainable from the will and facts in evidence that the testator intended to make the share of each devisee as nearly equal as practicable, no distinction should be made between them, but each share, whether the legacies created by the second and third clauses were specific or general, should be required to contribute ratably to the payment of the debts; and that, it being plain from the provisions of the will that it was the intention of the testator that there was to be no residuary estate until the debts were paid, it is immaterial whether or not the residuary real estate is exempt from the payment of the debts until all the personal property is exhausted, for practically the same result would follow if the personal estate should be first exhausted. Nor did the decree, making it optional to the legatees named in the third clause to exercise the right of selection conferred on them, or if they failed to select the notes, then requiring all the debts to be paid out of the residuary fund and the legacy to them, militate against this holding.

3.  ———: ———: **Specific and Demonstrative Legacies: Ademption.** Whether the third clause of the will created a specific or demonstrative legacy, it could be adeemed for the payment of debts in case of a deficiency of assets to pay them—the fund out of which it was to be taken being amply sufficient to pay the legacy. Demonstrative legacies abate ratably with specific legacies for the payment of debts.

4.  ———: **Executory Devise: Power of Disposition.** The will gave certain real estate to the widow and her two minor children in equal parts, and gave them equal portions of the residuum, "and in case either of said children die before reaching the age of majority, the share of the child so dying shall go to the survivor of said children." In another clause the testator directed that after his death the widow should have the care, control and custody of the estate of the two minors, as trustee for them, but said real estate was not to be "disposed of unless absolutely necessary." *Held*, that the will did not give the widow power of disposition over the estate, and, therefore, there was no power repugnant to or inconsistent with the executory devise.

Appeal from Greene Circuit Court.—*Hon. Jas T. Neville,* Judge.

AFFIRMED.

*Delaney & Delaney* for appellants Banister, John Baldwin O'Day, Catherine O'Day and Sue I. B. O'Day.

(1)   The debts of the estate must be paid primarily out of the residuary personal estate. If this prove insufficient, then the entire personal estate is liable—general legacies first contributing ratably and then specific legacies and, if necessary, next residuary real estate and next real estate specifically devised; for, under our statutes debts cannot be defeated by the provisions of a will. Booth v. Blundell, 1 Meriv. 193; McKay v. Green, 3 Johns. Ch. 56; Livingston v. Newkirk, 3 Johns. Ch. 312; Rogers v. Rogers, 1 Paige Ch. 188; Rogers v. Rogers, 3 Wend. 506; French v. Masten, 19 Mo. App. 614; Beck v. Kallmeyer, 42 Mo. App. 576; McQueen v. Lilly, 131 Mo. 9; Chinn v. Stout, 10 Mo. 709; Stokes v. O'Fallon, 2 Mo. 29; Brant's Will, 40 Mo. 278; 2 Woerner, Adm., sec. 489; 3 Jarman on Wills, p. 449. Property should be taken in such order for the payment of debts, and, except for the provisions of the statute, real estate, whether specifically devised or devised in residuary clause, cannot be charged with payment of debts unless expressly charged by the terms of the will; or unless charged by necessary implication; or unless the intention of the testator to so charge is manifest from all the terms of the will taken together. Cases cited supra; Wright v. Dunn, 10 Wheat. 205; Archer v. Deneale, 1 Peters 585; Harmon v. Smith, 38 Fed. 482; Appeal of Thompson (Pa.), 11 Atl. 455. (2)   The will of John O'Day does not in express terms charge the residuary real estate or any real estate with the payment of his debts; nor does it appear from the terms of the will or by implication that he intended so to do. A mere direction to pay debts does not charge realty. Nor does the residuary clause expressly or by implication charge the real estate with the payment of debts. This is

merely the usual clause and formula in all wills and simply is the expressed desire of testator not to die intestate. The maxim *reddendo singula singulis* applies. It is more than saying "the rest of my real estate not hereinbefore devised I give in equal parts and the rest of my personal estate not herebefore bequeathed I give in equal parts." The language does not blend the two kinds of property, but the language is used distributively. Lupton v. Lupton, 2 Johns. Ch. 625; Riley's Appeal, 34 Pa. St. 391; Brill v. Wright, 112 N. Y. 129; McCorn v. McCorn, 100 N. Y. 511; Briggs v. Carroll, 117 N. Y. 289; Matter of Rochester, 110 N. Y. 159. (3) The same doctrines apply with greater force to the payment of legacies. General legacies and demonstrative legacies which cannot be paid in full out of the corpus designated, are not chargeable on residuary real estate unless charged expressly by the will; or unless the intention of the testator to so charge the realty is manifest from all the provisions of the will; or unless such intention appears by necessary implication. 13 Am. andEng. Ency. Law, 110; Wright v. Dean, 10 How. 204; Laurens v. Reed, 14 Rich. Eq. 259; In re Matthewson, 12 R.I. 146, and cases cited under point 2. And the insufficiency of the personal estate to pay the general legacies is of slight weight in determining the intention of the testator to charge realty unless it affirmatively appears that the testator was aware of such deficiency. De-Frest v. DeFrest, 19 West Dig. 97; Matter of Rochester, 110 N. Y. 159. And see the strong language used in the following cases: Wright v. Dean, 10 How. 220; Brill v. Wright 112 N. Y. 129; McCorn v. McCorn, 100 N. Y. 511; Briggs v. Carrol, 117 N. Y. 289; Cleft v. Moses, 116 N. Y. 144. It is evident from the will itself that O'Day thought he had sufficient solvent notes alone to pay the $100,000 legacy and therefore could not have intended to charge the residue. Again, the desire of testator for an equitable

distribution is confined to the distribution of the residue in express terms, thereby negativing the idea of an equitable distribution in the specific and general devises and bequests. But even if the language of the will shows testator intended to make John and Allie O'Day equal with Sue O'Day and her children, it will not be inferred that he intended to charge real estate to accomplish such purpose. O'Kesson's Appeal, 59 Pa. St. 99; 2 Woerner, 491; Morris v. Sickley, 133 N. Y. 450; Turner v. Gibb, 48 N. J. Eq. 526; Duval's Estate, 146 Pa. St. 176; Drekerman v. Eddinger, 168 Pa. St. 440; Duncan v. Wallace, 114 Ind. 169; Briggs v. Carroll, 117 N. Y. 289. (4) If these two propositions apply, that the residuary real estate is not chargeable with either payment of debts or payment of legacies, then the residuary personalty being insufficient to pay debts, and the personalty being primarily liable for the payment of debts, the general legacies are adeemed first. 3 Jarman on Wills, 449; 2 Woerner, Adm., sec. 449; Redf. on Wills, part I, p. 868; Wallace v. Wallace, 23 N. H. 154; Humes v. Wood, 8 Pick. 478; Williams on Exrs., p. 437. This being true, if the bequest to John O'Day and Allie C. O'Day be treated either as a general legacy or as a demonstrative legacy, the debts must be made from such legacies if the residuary personalty is insufficient. (5) The bequest of $100,000 to John O'Day and A. C. O'Day is a general legacy. For the reasons hereinbefore stated, it is not a charge on the residuary realty, and must adeem if the residuary personalty is insufficient to pay the same after the payment of debts. Cases cited under points 1 and 2. The chief distinction between specific and general legacies is that the former singles out the particular or specific thing which the testator intends the donee to have, no regard being had to its value. Bradford v. Haynes, 20 Me. 105; Wallace v. Wallace, 23 N. H. 154. While the latter, general legacies, are payable out of a general estate, the chief element of the gift being its quantity or value. Abbott's Law Dic., title

"General Legacy." This legacy can, or could be, satisfied by the payment out of cash either on hand at death of testator or collected by the executor, or by the setting aside of any notes out of the notes existing at death of the testator. In re Est. of Wm. Salmon, 3 Dem. 270; Maybury v. Grady, 67 Ala. 153; McFadden v. Stefley, 28 S. C. 317; Everett v. Lane, 2 Ire. Eq. 548; Tomlinson v. Bury, 145 Mass. 346; Martin v. Osborne, 85 Tenn. 420; 1 Roper on Legacies, 218; Dicken v. Edwards, 4 Hare 276; Hancock v. Abbey, 11 Ves. 179. (6) At best the power of selection given to John O'Day and A. C. O'Day if timely exercised, merely empowers them to convert the general into a demonstrative legacy, so far as designating the notes as a fund out of which legacy might be paid, and it must be borne in mind that the selection is limited to a selection from notes. This does not make the bequest specific, either by direct terms of the will, because no specific notes are designated; nor does selection make it specific, because the election is to look to a fund, and the election merely designates the fund, and the segregating of certain of such notes is a satisfaction of the election and not the election itself. Gilmer v. Gilmer, 42 Ala. 16; Walton v. Walton, 7 Johns. Ch. 282; Martin v. Osborne, 85 Tenn. 420; Gilbert v. Shirley, 67 Md. 501; Addison v. Smith, 83 Me. 551; Byrne v. Hunn, 86 Mich. 54; Newcomb's Will, 98 Iowa 175; Smith v. Fellows, 131 Mass. 20. (7) The bequest of the seventy-five bonds to Sue I. B. O'Day and her children is specific; and the proceeds of the forty-three bonds sold is subject to such specific bequest. Ashburner v. McGuire, 2 L. C. Eq. ( 4 Am. Ed.), 672; Spencer v. Higgins, 22 Conn. 521; Gardner v. Prentup, 2 Bar. C. 88; Langdon v. Astor, 3 Duer (N. Y.) 478; Coburn v. Mills, 19 Gratt. (Va.) 438; Larkin v. Salmon, (3 Dem. 270; Towle v. Ewasey, 106 Mass. 100; Hayes v. Hayes, 18 Stem. (N. J.), 461; Stout v. Hart, 2 Halst. 414; Georgia Infirmary v. Jones, 37 Fed. 758; Starbuck v. Starbuck, 93 N. C. 183; Gilbraith v. Winter, 10 Ohio 64; Gilback v. Shively,

67 Md. 498; Bradford v. Brenley, 145 Mass. 81.    (8)   It is held by many authorities that real estate passing under the residuary clause is a specific devise.   Wallace v. Wallace, 23 N. H. 154; Wyman v. Borgden, 4 Mass. 754; Shreve v. Shreve, 10 N. J. Eq. 385.

*Tatlow & Mitchell* for appellants John and A. C. O'Day.

(1)   The rule in this State is that where the will directs the executor to pay off and discharge the debts out of the estate and then follows this direction by disposing of his property, real and personal, among his children, in substantially equal parts, by separate devises or bequests to them, and charges no specific property, either real or personal, with the payment of his debts, then all devisees and legatees are to contribute equally to the payment of such debts, and the debts are not to be paid entirely out of the real estate, and neither are specific legacies to be given preference over general legacies in the order of abatement of such debts, but all such legatees and devisees are required to contribute equally for the payment of such debts.   Brant's Will, 40 Mo. 266; secs. 4648 to 4650, R. S. 1899; 1 Underhill on Wills, sec. 397; Showalter v. Showalter, 38 Ill. App. 208; Reid v. Corrigan, 40 Ill. App. 404; Reid v. Corrigan, 143 Ill. 402; Canal v. Clements, 132 Ind. 163; Hill v. Bean, 68 Me. 200; Wilcox v. Wilcox, 13 Allen 252; Blaney v. Blaney, 1 Cush. 107; Peebles v. Acker, 70 Miss. 356; McQuinn v. Lilly, 131 Mo. 9; 3 Pom. Eq. Jur. sec. 1247; Massacker v. Massacker, 13 N. J. Eq. 264; Dey v. Dey, 19 N. J. Eq. 137; Paxson v. Potts, 3 N. J. Eq. 313; Turner v. Gibbs, 48 N. J. Eq. 526; Church v. Syms, 51 N. J. Eq. 363; Price v. Price, 52 N. J. Eq. 326; Lassister v. Wood, 63 N. C. 360; Perkins v. Caldwell, 79 N. C. 441; Robinson v. McIvet, 63 N. C. 645; Moore v. Beckwith, 14 Ohio St. 129; English v. Harvey, 2 Rawle 305; Hackadorn's Appeal, 11 Penn. St. 89; McCrea's Appeal, 47 Pa. St. 442; Gallagher's Appeal, 134

Pa. St. 240; Collins v. Reed, 148 Pa. St. 139; Markle's Estate, 148 Pa. St. 538; Weller's Estate, 169 Pa. St. 66; Mathewson's Petition, 12 R. I. 145; Moore v. Davidson, 22 S. C. 94; Gordon v. Ducker, 27 S. C. 295; In re Jamieson, 18 R. I. 385; Hutchinson v. Gilbert, 7 S. W. 126; Heiner v. Darling, 16 How. 1. (The English cases are numerous holding the same doctrine.)   (2)   The second point decided by the trial court is that after the residue of the estate is exhausted, the pecuniary bequests to Sue I. Baldwin O'Day and her minor children, and to the respondents John and A. C. O'Day, should abate ratably and equally for the payment of any such deficiency. Appellants claim that this ruling is erroneous by attempting to show that the legacy to John and A. C. O'Day is demonstrative, then assume that a demonstrative legacy abates before a specific legacy.   This assumption is clearly erroneous under all the authorities bearing on the subject. 1 Am. and Eng. Ency. Law, 56,57; Pomeroy's Eq. Jur., 1138; Roper on Legacies (2 Am. Ed.), 410; Williams on Excts. (7 Ed.), 1371; Roberts v. Peacock, 4 Ves. Jr. 150; Lambert v. Lambert, 11 Ves. Jr. 607; Acton v. Acton, 1 Meriv. 178; Creed v. Creed, 11 C. L. & F. 509; Florence v. Sands, 4 Redf. (N. Y.) 206; Cryder's Appeal, 11 Pa. St. 72; Dugan v. Hollins, 11 Md. 41; Gelbach v. Shindley, 67 Md. 501; Myers v. Myers, 88 Va. 131; Gaw v. Hoffman, 12 Gratt. 628; Alsup v. Brown, 76 N. C. 168.   (3)   The legacy to the respondents John and A. C. O'Day is a specific legacy. 18 Am. and Eng. Ency. Law, 716; Everett v. Lane, 37 N. C. 548; Perry v. Maxwell, 17 N. C. 488; 1 Underhill on Wills, sec. 414; Blundell v. Pope, 24 Atl. 456; Waters v. Hatch, 181 Mo. 262.

*J. T. White* for respondent Thomas K. O'Day.

(1)   An executory devise, unlike a remainder, may be limited after or mounted upon a fee.  In order for the executory devise to be valid it must be indestructible

by any act of the first taker. If, therefore, the same instrument that creates the executory devise gives an absolute power of disposition to the first taker, that is, a power to convey the absolute and unqualified estate free and clear of the executory devise, this power creates an irreconcilable repugnancy and inconsistency between it and the executory devise. And the following propositions are settled by the consensus of opinion of both the American and English courts: First, that in case of such repugnancy it is the executory devise that is destroyed, and not the power; second, that such power need not be created by express terms, but it is sufficient if it appears by necessary implication; third, that it is not essential or necessary that the power should be exercised. Its mere existence renders invalid the executory devise on the ground of repugnancy. 4 Kent (4 Ed.), sec. 270; Jackson v. Robbins, 16 Johns. 538; Jackson v. Bull, 10 Johns. 19; Ide v. Ide, 4 Mass. 500; Burbank v. Whitney, 24 Pick. 146; McRee's Admr. v. Means, 34 Ala. 369; Johnson v. Commonwealth, 82 Ky. 107; Hoxsey v. Hoxsey, 37 N. J. Eq. 21; Horne, Exr. v. Campbell, 100 N. Y. 287; McKenzie's Appeal, 41 Conn. 607; Kelly v. Meins, 135 Mass. 231; Armstrong v. Kent, 21 N. J. 509; Ramsdell v. Ramsdell, 21 Me. 288; Ferns v. Gibson, 4 Ed. Ch. 710; Melson v. Doe, 4 Leigh 408; Riddick v. Cohoon, 4 Randolph 547; Wolfer v. Hermer, 144 Ill. 560; Fisher v. Wister, 154 Pa. St. 76; Randall v. Josselyn, 59 Vt. 567; Jones v. Bacon, 68 Me. 34; Rone v. Meier, 47 Iowa 607; Howard v. Carusi, 109 U. S. 725; Wead v. Gray, 78 Mo. 59; Roth v. Rauschenbush, 173 Mo. 582; Gannon v. Albright, 183 Mo. 252; Holmes v. Gadson, 6 DeG. M. & G. 152. (2) An executory devise cannot be limited after a fee in personal property even though there is no express power of disposition as an absolute gift implies a power to dispose of the entire interest in the property, which creates the repugnancy that defeats the executory devise. Holmes v. Tolson, 73 Mo. 320. (3) No particular words are es-

sential or necessary to create a power of disposition. Any words, however informal, which clearly indicate an intention to give or reserve a power, are sufficient for that purpose, and a power given by implication is equally as valid as if given in express terms. Owen v. Switzer, 51 Mo. 322; Gavin v. Allen, 100 Mo. 293.

BURGESS, P. J.—John O'Day, on the 8th day of June, 1901, executed his last will, and the plaintiffs herein were appointed therein to execute said will. This suit is for the purpose of having said will construed, and it was filed in the circuit court of Greene county, Missouri, on the —— day of August, 1902, by said Sue I. B. O'Day and said E. W. Banister, and John Baldwin O'Day, Catherine O'Day and Thomas K. O'Day, infants, and children of the marriage of deceased testator with Sue I. B. O'Day, were made parties defendant. John O'Day and A. C. O'Day, children by a former marriage, were also joined as defendants. After the institution of the suit, at her personal request, Sue I. B. O'Day was also made a party defendant.

The infants, John Baldwin O'Day, Catherine O'Day and Thomas K. O'Day, were duly served with process, and T. J. Delaney was thereupon appointed guardian *ad litem* for said infant defendants. It being apparent to said T. J. Delaney that a conflict of interests might arise between said John Baldwin O'Day and Catherine O'Day named in the will, on the one side, and the posthumous child, T. K. O'Day, on the other, the appointment of said T. J. Delaney as guardian *ad litem* for Thomas K. O'Day was, at his own suggestion, set aside and J. T. White, Esq., was appointed guardian *ad litem* in his stead.

The testator died seized of a number of tracts of real estate and possessed of a large amount of money and notes.

Only such parts of the will as seem to be necessary to a proper understanding and solution of the questions

involved in this suit will be recited, and such are as follows:

"FIRST. I will and direct that all my just debts and funeral expenses be paid by my executors, hereinafter named, as soon as practicable after my death.

"SECOND. I give, devise and bequeath to my wife, Sue I. B. O'Day, and to my children, John Baldwin and Catherine, who are minors, as tenants in common, and not as joint tenants, all the following described real estate, . . . To have and to hold all of said several tracts or parcels of land, with all of the buildings, structures and improvements thereon or appertaining thereto, as such tenants in common, and to their heirs and assigns forever.

"I also give and bequeath to my wife, Sue I. B. O'Day, and said two minor children, John Baldwin and Catherine, the seventy-five thousand dollars (par value) of railroad bonds which are in the hands of E. W. Banister, as agent for me, and in the event that I shall sell any or all of said bonds, then in lieu of the said bonds so sold I give to said three persons above mentioned the proceeds of said bonds, or a sum equal to such proceeds of said bonds so sold, said $75,000 of bonds, or the proceeds of any or all thereof, to be divided equally among said three persons.

"And in case either of said children, John Baldwin or Catherine, shall die before I do, or at any time before he or she reaches the age of majority, it is my will that the share of the child so dying, whether of the property hereinbefore or hereinafter devised or bequeathed, shall go to the survivor of said children.

"THIRD. I give, devise and bequeath to my sons, Allie and John (both of whom are of age), the following described real estate, . . . To have and to hold all of said several tracts or parcels of land, with all the buildings and improvements thereon or thereto appertaining, as tenants in common, and not as joint tenants, to them and their heirs and assigns forever.

"I also give to my said sons, John and Allie, one hundred thousand dollars in cash, or at their option they may take all or any part of said amount in notes belonging to me at the time of my death, at the face value thereof, said sum of one hundred thousand dollars, whether in cash or notes, or part cash and part notes, to be divided equally between them, share and share alike.

"SIXTH. All the residue and remainder of my estate, real and personal, and wherever the same is situated, whether now owned or hereafter acquired by me, I give, devise and bequeath to my wife, Sue I. B. O'Day, and my four children, Allie, John, John Baldwin and Catherine, share and share alike, so that none of said five persons shall receive or have any preference over the others, or either of them, as to said residuary estate.

"It is my wish that my estate shall be divided as herein provided for, without the necessity for any partition or other suit or suits, and I direct and request that my wife and children make an earnest effort to divide said residuary estate among themselves without resorting to any outside aid; and in order to facilitate and make such division possible, in case said John Baldwin O'Day and Catherine O'Day, or either of them, shall not have arrived at the age of majority at the time such division is undertaken, I hereby authorize, empower and direct the executor or executors of this will to act for said minor children, or either of them, in making the division of said residuary estate; and I do for that purpose invest said executor or executors with full power and authority to act for said minor children, or either of them, and to make such division, including the right, authority and power to make, execute and deliver any deed, deeds or other instruments, writing or assurances of any kind which may be necessary or proper to effectuate and carry out a division of said residuary estate as herein contemplated, and I do hereby direct that any

deed or other instrument in writing made, executed and delivered by my said executors or executor in charge of my estate, in the name of and for and on behalf of said minor children, or either of them, in order to effectuate such division of said residuary estate shall have the same force and effect as if the same were executed and delivered by said children, or either of them, for whom said instrument is so made, and they, or either of them, were at the time of its execution and delivery of full age and capacity to execute the same.''

By the seventh clause of said will, it is provided as follows:

''I desire that my wife, Sue I. B. O'Day, shall after my death have the care, charge, custody and control of the estates of my two minor children, John Baldwin and Catherine, so long as she remains a widow, but in case she shall remarry, as soon as that event occurs I direct that all the estates of said two minor children shall vest in and be transferred to said E. W. Banister, in trust for said children, until their respective majority. And whether the said estates be under the care and charge of my wife or of said Banister, I vest them, and each of them, while acting as such trustee, with full power to manage and control the same, but it is my desire that the real estate which forms a part of the estate of said minors be preserved and not disposed of unless it is absolutely necessary or unquestionably advisable. And I direct that neither my wife nor said Banister be required to give bond while holding, controlling or handling said estate as executors, trustee or curator.''

By the will specific devises of real estate were made to Sue I. B. O'Day and to her two children then living, and specific devises were also made to John O'Day and A. C. O'Day, children aforesaid, but no provision whatever was made for the posthumous child, nor was any reference made to said child in the will.

The testator died seized of a large number of tracts of real estate not specifically devised, and died pos-

sessed of $55,131.40 in cash, which sum was on deposit in his name in the bank of the Holland Banking Company, also possessed of thirty-two bonds of the St. Louis and San Francisco Railroad Company, also the sum of $31,669.93 which was on deposit in the National Exchange Bank, also a large amount of notes of the face value of about $260,000, and other personal property. The $55,131.40 on deposit with the Holland Banking Company was the proceeds of the $43,775 bonds of the St. Louis and San Francisco Railroad Company, mentioned in the will, and especially bequeathed to Sue I. B. O'Day and her two children. Many of the notes owned by O'Day at the time of his death were worthless.

The estate proved insufficient to pay the debts and satisfy the legacy of $100,000, to John O'Day and Allie C. O'Day, children by a former marriage, and one of the questions involved in this litigation is, how this shortage should be met and out of what property paid. At the time of executing his will said testator owned $75,000 of bonds (par value) and other personal property, consisting mainly of notes and bonds. A short time before his death he sold forty-three of his bonds, to-wit, $43,000, par value, and realized thereon the sum of $51,730.44, and this sum was converted into a draft and deposited in the bank of the Holland Banking Company, at Springfield, to the credit of the testator, and was not mingled with any other fund, nor was any sum added to or taken therefrom by him, and from the time of such sale to the time of his death such sum was carried intact and separate and distinct from all other moneys owned by him. The evidence showed that such sum was by the direction of said testator placed on deposit with the Holland Banking Company, and that no other account was carried by said testator at said bank, but that all the rest of his bank dealings were had with the National Exchange Bank of Springfield, Missouri. The evidence further shows that the testator died possessed of other personal property consisting, as stated,

mainly of notes and cash, and that the real value thereof did not exceed $100,000 of which $31,669.93 was cash, exclusive of said deposit aforesaid. It appears that debts amounting to several thousand dollars were standing against O'Day's estate and paid, so that after such payment there was not sufficient personal estate, beside the $75,000 of bonds, above mentioned, to pay the $100,000 legacy to John O'Day and Allie C. O'Day. Before the institution of this suit the executors had paid said Sue I. B. O'Day the said sum of $51,730.44 realized from the sale of $43,000 (par value) of said bonds, and they had paid to John O'Day and Allie C. O'Day the sum of $25,000 out of the cash on hand in the National Exchange Bank at the time of the testator's death and out of moneys collected since the death of the testator.

Before the rendition of the judgment in this suit John O'Day and Allie C. O'Day filed suit against the posthumous child, Thomas K. O'Day, to partition the lands to them specifically devised, and all of said lands, except the tract known as the old "O'Day Homestead," were partitioned, and the interests of said parties were adjusted, the share of said Thomas K. O'Day being decreed as one-sixth interest in all of said lands, and said Thomas K. O'Day was also decreed entitled to one-sixth of all the personal property of which testator died possessed and which was bequeathed to others, and he was also decreed entitled to one-sixth of all residuary estate, real and personal.

The evidence shows that the executors advanced to John O'Day and Allie C. O'Day the sum of $25,000, that this sum was paid out of the general fund of $31,669.93, and that the debts were also paid out of this fund and out of money collected after the death of the testator. It appears that at the time the testator made his will he had on hand about $260,000 of notes, and that he thought at least $165,000 of said notes were good, and that he believed at the time of making said will that his estate was ample to meet the legacy of

$100,000 to his sons. There was some evidence tending to show that defendants John O'Day and A. C. O'Day made an election to take certain of the notes in lieu of the cash bequest, or as part of said bequest, but on this the evidence is conflicting and unsatisfactory.

Over the objection of plaintiffs, defendants John and A. C. O'Day were permitted to introduce evidence tending to show that by the provisions of the will the properties, by value, aggregated about three-fifths for Sue I. B. O'Day and her children, and two-fifths for John and A. C. O'Day.

On the evidence adduced the court made and entered the following decree:

"Now comes on this cause to be heard, and the plaintiffs appearing in person, and the defendants John O'Day and Allie C. O'Day, appearing in person and by attorney, W. D. Tatlow, and the defendant Sue I. B. O'Day appearing by attorney, Thos. J. Delaney, by consent of parties and request of said defendant, and the defendant minors John Baldwin O'Day and Catherine O'Day appearing by their guardian *ad litem,* T. J. Delaney, and the defendant minor Thomas K. O'Day appearing by his guardian *ad litem,* J. T. White, and this being a petition by the said executor and executrix, praying for the construction of the last will of the said John O'Day, deceased, the court doth find:

"That the said John O'Day, deceased, died on July 30, 1901, and left a last will and testament, which has been duly probated in the probate court of Greene county; that the plaintiffs are executor and executrix of the said last will and testament, duly qualified and acting as such; that the said John O'Day, deceased, left surviving him his widow, the said Sue I. B. O'Day, and children, John O'Day and Allie C. O'Day, who are of age, and John Baldwin O'Day, Catherine O'Day and Thomas K. O'Day, who are minors; that the said T. J. Delaney has been duly appointed the guardian *ad litem* by this court for the minors John Baldwin O'Day and

Catherine O'Day and that the said J. T. White has been duly appointed by this court as guardian *ad litem* for the said minor Thomas K. O'Day; and that the said guardians *ad litem* have filed their several answers for the said minors herein.

"The court doth further find that the minor defendant Thomas K. O'Day was born after the death of said John O'Day, deceased, and was not mentioned or in any manner provided for in said will.

"The court doth further find that the said John O'Day, deceased, by the said will, intended to dispose of all his property, and by one clause of the said will be made the following provisions:

" 'I also give to my sons, John and Allie, $100,000 in cash, or, at their option, they may take all or part of said amount in notes belonging to me at the time of my death at the face value thereof, said sum of $100,000, whether in cash or notes, or part cash and part notes, to be divided equally between them, share and share alike.'

"That said last will and testament contains also the further following provisions:

" 'I also give and bequeath to my wife, Sue I. B. O'Day, and said two minor children, John Baldwin O'Day and Catherine O'Day, the $75,000 (per value) of railroad bonds which are now in the hands of E. W. Banister as agent for me, and in the event that I should sell any or all of said bonds, then in lieu of the said bonds so sold I give to the said three persons above mentioned the proceeds of the said bonds so sold, the said $75,000 of bonds, or the proceeds of any or all thereof, to be equally divided among said three persons.'

"That by the two said clauses and by the other provisions of said will said testator intended to give said John O'Day and Allie C. O'Day two-fifths of his estate, and said Sue I. B. O'Day and said John Bald-

win and said Catherine O'Day three-fifths of his said estate.

"That the said John O'Day, by other provisions of the said will, devised a portion of his real estate, hereinafter described, to the said Sue I. B. O'Day and John Baldwin O'Day and Catherine .O'Day; and also a portion of his real estate, described in said will, to the said John O'Day and Allie C. O'Day.

"The court doth further find that the said John O'Day, deceased, at the time of his death, owned the real estate above mentioned and devised as aforesaid, and in addition thereto a large amount of real estate not specifically devised, which last-mentioned real estate is not particularly described in said will, and that said John O'Day at the time of his decease, owned the $75,000 of bonds above mentioned, and that there has been inventoried by the executors other personal property consisting mainly of cash and notes, which other personal property the court finds to be of the value of not more than $100,000, and that debts have been allowed against the said estate amounting to several thousand dollars, so that there is not sufficient personal estate besides the bonds above mentioned to pay the $100,000 legacy to John and Allie C. O'Day and the said debts.

"The court doth further find that by the residuary clause of the said will, the said John O'Day, testator, left all his estate, real and personal, not specifically devised as above set forth, to the five persons named in the said will, Sue I. B. O'Day, John Baldwin O'Day, Catherine O'Day, John O'Day and Allie C. O'Day.

"The court doth further find that the $43,000 (par value) of the aforesaid bonds were sold by the said John O'Day, testator, during his lifetime, and the proceeds thereof were deposited in the bank of the Holland Banking Company and kept and maintained by the said John O'Day, testator, intact and separate from all other money owned by him as a distinct fund; that he

left at the time of his death cash on hand and in bank $31,669.93.

"The court doth further find that it was the intention of the said John O'Day, testator, by the said last will, to give to the said Sue I. B. O'Day, John Baldwin O'Day and Catherine O'Day, the said $75,000 bonds or the proceeds thereof as a specific legacy; and that it was the intention of the said testator, by the said will, to give to said John O'Day and Allie C. O'Day the sum of $100,000 as a general legacy, with the power in said John and Allie C. to select said amount in cash on hand at time of his death, or notes, or part cash and part notes, thereby making the same a specific legacy.

"The court doth further find that the executor and executrix have paid over to said Sue I. B. O'Day, for herself and for the said John Baldwin and Catherine O'Day, the sum of $51,730.44, the proceeds of the $43,-000 bonds deposited in Holland's Bank as aforesaid, and that the said executor and executrix have paid over to the said John O'Day and Allie C. O'Day the sum of $25,000, in part payment of their said legacy of $100,000, which amount was paid out of the cash left on hands by the said John O'Day, testator, at the time of his decease and moneys collected since his death.

"The court doth further find that the real estate mentioned in the said will and specifically devised to the said John O'Day and Allie C. O'Day has been, by partition proceedings in this court, partitioned between the said John O'Day and Allie C. O'Day and the said infant, Thomas K. O'Day; and the interest of the said Thomas K. O'Day has been set off to him under the order of this court in and to the real estate last above mentioned, with the exception of one tract thereof, known as the "O'Day Homestead," and hereinafter more particularly described.

"The court doth further find that the said Thomas K. O'Day is entitled to an undivided one-sixth interest in all the real estate specifically devised to the said Sue

I. B. O'Day, John Baldwin O'Day and Catherine O'Day; and also entitled to an undivided one-sixth interest in the real estate devised to John O'Day and Allie C. O'Day and not partitioned as above set forth; and that the said infant is also entitled to a one-sixth of all the personal property left by the said testator at the time of his decease after the payment of the debts of said deceased and expenses of administration; and also entitled to an undivided one-sixth interest in all the real estate left by the said testator at the time of his death, and not specifically devised, as above mentioned.

"It further appearing to the court that the said Thomas K. O'Day, minor, by his guardian *ad litem,* T. J. White, has prayed for a partition of the real estate last above mentioned, belonging to the residuary estate of the said John O'Day, testator, and all the parties interested or having any claim or interest in the said residuary real estate being now before this court, it is therefore considered, ordered and adjudged as follows:

"That the $75,000 of railroad bonds above mentioned, or the proceeds thereof, be and is adjudged to be a specific legacy.

"That the $100,000 bequeathed by the said will to the said John O'Day and Allie C. O'Day be and is hereby adjudged a general legacy. But if said John O'Day and Allie C. O'Day shall select of the notes and cash on hand at the time of the testator's death, amounting to $31,669.93, the sum of $100,000, less the $25,000 already received by them, taking the said notes at their face value, in the payment of the said legacy, then the same shall become and be a specific legacy; and the said executor and executrix are hereby ordered to exhibit to the said John O'Day and Allie C. O'Day all the notes which were in their hands at the time of the making of the inventory of the said estate (except the proceeds of the

193 Sup—6

bonds above mentioned) and the proceeds of such notes as have been collected may be selected in lieu of the above notes themselves, a reasonable time being allowed for such selection after such exhibition.

"And if the said John and Allie C. O'Day, from the said cash and from the said notes and the proceeds thereof, at the face value of the said notes, such face value being the amount thereof, with accrued interest at the time of such selection, shall select the sum of $75,000 (they having already received the sum of $25,-000 in cash as aforesaid), then the said $100,000 legacy by such act and selection shall be and become a specific legacy of the same class and on the same footing as the other specific legacies of personal property mentioned in the said will; and such of the proceeds of said notes and such cash as was on hand at the time of the making of the said inventory as has been applied and used in the payment of debts and expenses of said estate shall be replaced and refunded out of the proceeds of said residuary estate, and if there be not enough of such proceeds for that purpose, then the said Sue I. B. O'Day, John Baldwin O'Day and Catherine O'Day shall contribute their proportional part in the proportions hereinafter provided.

"It is further ordered and adjudged that the residuary real estate above mentioned, and hereinafter more particularly described, shall be sold for the purpose of paying the debts allowed against the said estate and the said general legacy; and if the said residuary real estate shall be insufficient to pay all the debts which are allowed, or may hereafter be allowed, against the said estate and the expense of administering the said estate, then the same shall be paid out of the personal property not specifically devised, and the said legacy of $100,000 shall abate, if necessary, in an amount sufficient to pay the remainder of the said debts and expenses of administering the said estate.

"But if said John O'Day and Allie C. O'Day

should select as above set forth the sum of $75,000 in cash and notes, then their said general legacy shall become a specific legacy, and in such case it is ordered and adjudged that, if the residuary real estate as aforesaid be insufficient to pay the said debts and costs of administration, and there be insufficient personal property not selected by the said John O'Day and Allie C. O'Day, as aforesaid, to pay the said debts, then in that case the said specific legacy of $100,000 to the said John O'Day and Allie C. O'Day and the said specific legacy of $75,000 in railroad bonds to the said Sue I. B. O'Day and the said John Baldwin O'Day and the said Catherine O'Day shall abate, so as to pay said debts and expenses of administering the said estate. That is to say, the legacy of $100,000 shall abate to make up two-fifths of such deficiency and the legacy of railroad bonds shall abate to make up three-fifths of such deficiency.

"It is further ordered, adjudged and decreed that the said residuary real estate, in accordance with the prayer of the answer filed by the said J. T. White, guardian *ad litem* for the said Thomas K. O'Day, be partitioned among the several parties according to their several interests; that is to say: One-sixth interest to said Thomas K. O'Day, a one-sixth interest to the said Sue I. B. O'Day, a one-sixth interest to the said John Baldwin O'Day, a one-sixth interest to the said Catherine O'Day, a one-sixth interest to the said John O'Day, and a one-sixth interest to the said Allie C. O'Day.

"It being apparent to the court that the last-mentioned real estate, from its character and location and from the nature and amount of the property sought to be divided and the number of owners thereof, cannot be partitioned in kind without great prejudice to the owners, it is therefore ordered and adjudged that the said real estate, which is described as follows, to-wit:   . .

"That the same be sold, and one-sixth of the proceeds thereof belonging to the said minor, Thomas K.

O'Day, be paid to him, and that the remaining proceeds of such sale be held for the purpose above provided by the terms of this decree.

"It is further ordered and adjudged that the said executor and executrix be and are hereby appointed commissioners of this court to sell the said real estate under this order, during the session of the circuit court in the several counties where the same is situate as soon as practicable, and report their proceeding at the next term of this court after such sales.

"It is further ordered, adjudged and decreed that the said Thomas K. O'Day be and is entitled to an undivided one-sixth interest in all the real estate above mentioned, devised by the said will to the said Sue I. B. O'Day, John Baldwin O'Day and Catherine O'Day, all of which real estate is situated in Greene county and State of Missouri, to-wit:  . . . .

"The said Thomas K. O'Day may maintain an action in partition for the division of the same and may have immediate possession of the same, and an order of this court may issue therefor upon application of the said guardian *ad litem* or the general guardian of said minor, if such should hereafter be appointed.

"The court doth further order, adjudge and decree that the said Sue I. B. O'Day shall pay to the duly appointed curator of the said minor, Thomas K. O'Day, a one-sixth of all rents which have been collected by her from the real estate specifically devised to the said Sue I. B. O'Day, John Baldwin O'Day and Catherine O'Day; and the said Sue I. B. O'Day and the said E. W. Banister be ordered to pay over to the duly appointed curator of the said minor all of the rents which have been collected by them from the real estate set apart to the said minor, Thomas K. O'Day, in the partition proceedings between the said John O'Day and Allie C. O'Day and the said Thomas K. O'Day, which real estate consists of the property known as the Gott Hotel

property in the city of Springfield, Greene county, Missouri.

"That the said Sue I. B. O'Day and the said E. W. Banister, as executor and executrix, and in their own proper person, are hereby ordered to make an accounting for such rents as they have received, as aforesaid, with the duly appointed curator of the said minor, and such curator, on motion in this cause, may procure such accounting.

"It is further ordered, adjudged and decreed that the said executor and executrix, in making distribution of the personal estate in their hands, shall pay and deliver to the ·duly appointed curator of the said minor a one-sixth of all the personal property and money which has come or may hereafter come into their hands as such executor and executrix, including a one-sixth of the said bonds and proceeds thereof and a one-sixth of the cash and notes and other personal property belonging to the said estate after the payment of all debts and the expenses of administering the said estate; that is to say: that all the debts of the said estate shall be first paid, and after such payment a one-sixth of all the said personal property shall be paid over and delivered to the duly appointed curator of the said infant, Thomas K. O'Day; and after the residuary real estate above mentioned shall have been sold, and the proceeds thereof appropriated to the payment of the debts, except the one-sixth interest of the said minor, the said minor shall be charged with a sum and· amount out of his share in the said personal estate equal to his share of said proceeds of said residuary real estate, and such amount shall be deducted from the personal property delivered to him."

On the rendition of this decree, the plaintiffs, Sue I. B. O'Day, as executrix, and E. W. Banister, as executor; the defendants John Baldwin O'Day and Catherine O'Day, by their guardian *ad litem,* T. J. Delaney; the defendants John O'Day and Allie C. O'Day, and

the defendant Sue I. B. O'Day, in her individual capacity, filed their several motions for a new trial and filed their several motions in arrest of judgment, and the same were by the court overruled, and exceptions to such rulings were duly made by the respective parties at the time.

Thereupon applications for appeal were made by all said parties, duly verified by affidavits, and appeals were allowed, and leave was given to all said parties to file a bill or bills of exceptions within and including the first day of the following term, to-wit, January term, 1903, and a bill of exceptions, concurred in by all appellants and for all appellants, was on said first day of said term duly presented to the judge of said Greene circuit court for allowance, and on said day the same was signed by said judge and allowed, and on said day the same was filed with the clerk of said circuit court.

The plaintiffs, Sue I. B. O'Day, executrix, and E. W. Banister, executor; and John Baldwin O'Day and Catherine O'Day, minor, defendants; and Sue I. B. O'Day, in her individual capacity, assign the following errors:

"The court erred in admitting incompetent, irrelevant and immaterial testimony offered by defendants John O'Day and A. C. O'Day.

"The court erred in excluding competent, relevant and material testimony offered by plaintiffs, and offered by the minor defendants, and offered by Sue I. B. O'Day in her individual capacity.

"The finding of facts by the court is not warranted by the evidence.

"The conclusion of law reached by the court in said decree is not the law and is not sustained by the facts found.

"The construction placed upon said will is against the law and against the manifest intention of the testator.

"The court erred in declaring that said will

charged the residuary real estate with the payment of debts.

"The court erred in declaring that said will charged the residuary real estate with the payment of the legacy to John and Allie O'Day.

"The court erred in declaring that said will charged the residuary real estate with the payment of the legacy to John and Allie O'Day.

"The court erred in declaring that the right of selection was a subsisting right in John O'Day and Allie C. O'Day.

"The court erred in declaring the law to be that such selection when made would convert said bequest into a specific legacy.

"The court erred in declaring the law to be that under the terms of the will the specific bequest to Sue I. B. O'Day and her children abated ratably with the bequest to John and Allie O'Day.

"The court erred in declaring the law to be that the specific devises abated ratably to make good the legacy to John and Allie O'Day.

"Under the testimony, the bequest to John and Allie O'Day is a general one, or at best a demonstrative one, so far as notes are concerned (if right of selection subsists), and adeems for the payment of debts if residuary property be insufficient to pay debts and such legacy of $100,000."

It is insisted by plaintiffs that the debts of the estate must be paid out of the residuary personal estate, and that, if this prove to be insufficient, the entire personal estate is liable; general legacies first contributing ratably, and then specific legacies; next if necessary, residuary real estate, and, next, real estate specifically devised, because, under our statute, debts cannot be defeated by the provisions of a will. Upon the other hand, it is contended that where the testator directs the executors to pay off and discharge the debts out of the estate, and follows this direction by disposing

of his propc.vy, real and personal, among his children, in substantially equal parts, by separate devises or bequests, and charges no specific property, either real or personal, with the payment of his debts, the rule in this State is that all devisees and legatees are to contribute equally toward the payment of such debts; that the debts are not to be paid entirely out of the real estate, nor are specific legacies to have preference over general legacies in the order of abatement of such debts, but that all legacies and devises are required to contribute ratably.

In Brant's Will, 40 Mo. 266, the testator directed his executors to pay off and discharge all of his debts out of his estate as soon as it could conveniently be done after his decease. He then bequeathed and devised his estate, by specific legacies, and devises to his wife and his children in nearly equal parts. The debts were paid off by the executors from the rents collected from the real estate. Upon a bill to marshal assets, it was held, as the testator had designated no specific fund from which the debts were to be paid, it was his intention that the devisees and legatees should contribute ratably to the abatement of the incumbrance, and that the whole burden of the debts could not be thrown upon the personal estate.

The rule contended for by respondents John and Allie C. O'Day seems to be announced in Brant's Will case, supra, wherein it is said: "If a man dies intestate, owing debts, payment will be made in the regular order pointed out by the statute, commencing with the personalty; but if he devises and bequeaths his whole property specifically, both real and personal, it is an indication that the objects or recipients of his bounty shall have the estate in the proportion designated in the will. Where, therefore, the testator makes various specific gifts of movable and immovable property, and large amounts of debts, resulting from contingent liability perhaps, which were unexpected and not contem-

plated by him at the time of his decease, are proved up against the estate, will it be believed or considered that it was intended by him that that part of the property which consisted wholly of the realty should be entirely indemnified from his debts by the rest? Or, in other words, that the law should step in and make a distinction where he had made none, and where he had made equal provision for all, and each and every specific devisee and legatee, it should be held that one set of beneficiaries should hold their estate intact, whilst another set should be thrown upon the world destitute and beggared? Yet, the enforcement of the rule pressed in the argument for the plaintiff would lead precisely to this result. The just and equitable manner of construing the will is to give it such an application as, in the arrangement for the payment of debts, the plan of the testator in the distribution of the property shall be fairly carried out, and no disappointment shall happen to those who appear to have been equally the subjects of his bounty and affection. Of course, this opinion as to the true construction of the will must be considered as applying to specific devises and legacies, and not to any residuary clause that may be contained in the instrument.''

A will is always to be construed in accordance with the intent of the testator, which is to be arrived at, not from single words or clauses or sentences, but from a consideration of the whole will, its general design and scope; and in order to a proper and practical construction of a will, technical rules must yield to the obvious intent of the testator, as gathered from all parts of the instrument. Such being the rule observed by this court in the construction of wills, there is no escape from the conclusion that the testator in this case intended, in the distribution of his property among his wife and four children, to make them as nearly equal as practicable; and this being the case, the court should make no distinction between the parties who are the recipients of

his bounty where the testator made none. This view is in accord with the principle announced in Brant's Will case, supra, and while that case is not in line with authorities cited by counsel for appellants, it is to be commended for its sound logic and the equitable principles promulgated by it. And although forty years have elapsed since it was decided, it has never been overruled, or even criticised, and having for so long a time been recognized as the law of this State, should not at this late date be interfered with.

But it is claimed by plaintiffs that the will passed upon in Brant's case is to be differentiated from the will in the case at bar, in that the testator, O'Day, in his will did not specifically dispose of his whole estate, as was done by the will in Brant's case; that the concluding sentence in that case, "Of course, this opinion as to the true construction of the will must be considered as applying to the specific devises and legacies, and not to any residuary clauses that may be contained in the instrument," means any will with specific dispositions of property followed by a residuary clause, and that as it is manifest, not only from the will but from the evidence adduced, that the testator thought he had ample personal property to liquidate all of his debts and pay all legacies, specific and general, he could not have intended to charge his real estate. But it is apparent from the reading of the will in that case that it contained no residuary clause, so that there was nothing to call for such observations, and should not be regarded as in any way detracting from or nullifying the opinion in that case. Defendants do not contend that the rule announced in that case applies to the residuary property, but their position is that there can be no such thing as residuary property until after all previous devises, bequests and debts have been paid. By the residuary clause of the will it is expressly provided that all the residue and remainder of the testator's estate is devised and bequeathed to his wife and four chil-

dren, share and share alike, and  whether or not the
residuary real estate is exempt from the payment of
debts until all of the personal property is exhausted is
entirely immaterial in so far as the rights of the par-
ties are concerned, for practically the same result would
follow if the personal estate should be first exhausted.
Nor can the Brant case be distinguished from this upon
the ground that all of the legacies in that case were spe-
cific; and this is manifest by a comparison of the second
clause of the Brant will with the concluding part of the
third clause of the will involved in this controversy. In
that part of Brant's will to which reference has just
been made, the testator after giving to his wife various
articles of property and stocks in different corporations,
bequeathed to her all money due him in any bank or
banks or from any corporation or institution, or any in-
dividual, all notes or credits and also all debts due or
to become due to him, and not otherwise disposed of
by his will, to have and to hold the same to her and her
heirs and assigns forever; while, by the last clause in
the third paragraph of the O'Day will, the testator be-
queathed to his sons John and Allie one hundred thous-
and dollars in cash, or at their option they might take
all or any part of said amount in notes belonging to
said testator at the time of his death at the face value
thereof.  These bequests are substantially similar, and
it must follow that if the bequest to Mrs. Brant was
specific, so is also the bequest to these respondents. The
decree left it optional with John and Allie C. O'Day to
exercise the right of selection conferred upon them by
the will; but if they failed to select, then all of the debts
were to be paid out of the residuary fund and the le-
gacy to them.  But as the residuary estate was insuffi-
cient to pay the debts, they chose to exercise the right
of selection.

As there was ample personal property to pay the
debts, the question with which we are confronted is,
whether the specific legacy is entitled to priority over

the legacy of respondents in order of abatement in payment of the debts. It is said for appellants that the legacy to John and Allie C. O'Day is not specific, for the reason that the right to select cash or notes on hand at the time of the death of the testator to pay such legacy only makes it demonstrative. Conceding that the legacy under discussion is a demonstrative legacy, do not specific and demonstrative legacies occupy the same plane with reference to ademption for the payment of debts in case of a deficiency of assets to pay them? Upon this question, it is said: "After all the personal estate not specifically bequeathed has been exhausted, specific legacies and devises abate pro rata, and demonstrative legacies, so far as the fund upon which they are charged will extend for their payment, abate ratably with specific legacies; but in so far as it may be necessary to resort to the general estate, by reason of the total or partial failure of the fund, they are to be regarded as general legacies, in which event they contribute pro rata with other general legacies." [1 Am. and Eng. Ency. Law (2 Ed.), 56.] In Armstrong's Appeal, 63 Pa. St. 312, it is held that a demonstrative legacy is the bequest of a certain sum of money to be paid out of a particular fund, and when there is a deficiency of assets to pay both debts and legacies, specific devises and specific legacies shall abate proportionately.

In Dugan v. Hollins, 11 Md. 41, it was ruled that when a fund upon which a demonstrative legacy is chargeable does not exceed it in amount, it is to be treated in some respects as specific; it is liable to abate with specific legacies in the payment of debts, and liable to contribution from them if the fund demonstrated has been so applied to the exemption of specific legacies.

In Pomeroy's Equity Jurisprudence, with reference to the abatement of demonstrative legacies, it is said: "If the fund out of which they are primarily made payable exists as part of the testator's estate at his death, demonstrative legacies are governed by the

same rules as specific legacies, and abate only with them ratably; but if the fund does not so exist, they become, in effect, general legacies, and must contribute pro rata with all the other general legacies." [3 Pomeroy's Eq. Jur. (3 Ed.), sec. 1138; Mullins v. Smith, 1 Dr. & Sm. 204; Florence v. Sands, 4 Redf. (N. Y.) 210; Gelbach v. Shively, 67 Md. 501.]

There is no question in this case but that the fund out of which the legacy in question was to be paid was amply sufficent for that purpose, and was not, therefore, liable to abate other than pro rata with the legacy of appellants; so that, whether the legacy in question was demonstrative or specific, as held by the trial court, the result is the same.

It is plain from the provisions of the will that it was not the intention of the testator that there should be any residuary estate until the debts were paid. The testator first directs the payment of the debts; then, by the sixth clause of the will, he gives to his wife and four children all the residue and remainder of his estate, clearly meaning what was left remaining after the payment of his debts and the devises and bequests mentioned in the will. The language used can bear no other construction.

It will not be contended that the authorities are in harmony upon the question as to whether the blending of real and personal property in the residuary clause of a will is of itself sufficient to charge the residuary real estate with the payment of legacies, but the weight of authority seems to be decidedly that way. Among other courts of high authority which announce a contrary view is the Court of Appeals of New York. [Biggs v. Carroll, 117 N. Y. 288.]

The personal property of the testator O'Day which passed under the residuary clause of his will was only about six hundred dollars, which he must have known was insufficient to pay his debts, which he unquestionably knew were largely in excess of that amount. Nor

does the fact that he was mistaken with respect to the amount of solvent notes which he owned at the time of the execution of the will alter the case, for he specifically charged these notes with the payment of the legacy to John and Allie C. O'Day, which would seem to be inconsistent with the idea that these notes or cash on hand must be applied to the payment of his debts in preference to the payment of the legacy to respondents.

A point is made by the guardian *ad litem* of Thomas K. O'Day with reference to the effect upon the property devised and bequeathed to Catherine O'Day, deceased, of that part of the seventh clause of the will which says, "I desire that my wife, Sue I. B. O'Day, shall after my death have the care, charge, custody and control of the estates of my two minor children, John Baldwin and Catherine, so long as she remains a widow, but in case she shall remarry, as soon as that event occurs I direct that all the estates of said two minor children shall vest in and be transferred to said E. W. Banister, in trust for said children, until their respective majority. And whether the said estates be under the care and charge of my wife or of said Banister, I vest them and each of them, while acting as such trustee, with full power to manage and control the same, but it is my desire that the real estate which forms a part of the estate of said minors be preserved and not disposed of unless it is absolutely necessary or unquestionably advisable. And I direct that neither my wife nor said Banister be required to give bond while holding, controlling or handling said estate as executor, trustee or curator."

The contention is that that clause of the will, limiting the estate which Catherine and John Baldwin O'Day acquired under the will to the survivor in case of the death of either of them, gives a power of disposition of their interest to Sue I. B. O'Day and E. W. Banister, which power is inconsistent with the executory devise and renders the executory devise invalid by

reason of repugnancy, and that, therefore, the interest which the minor, Catherine O'Day, acquired under the will would descend, one-fourth to Sue I. B. O'Day, one-fourth to Thomas K. O'Day, one-fourth to John Baldwin O'Day, and one-eighth each to Allie C. and John O'Day, the last two persons named being brothers of the half blood.

It was unquestionably the purpose and intention of the testator, as expressly provided in the will, that in the event of the death of either John Baldwin or Catherine O'Day before the testator, or at any time before he or she reached the age of majority, the share of the child so dying in all the property devised or bequeathed to them, should go to the survivor of said children. His intention could not well have been expressed in stronger or more certain terms, and before his purpose should be thwarted by any power of disposition in others, the authority to do so should be expressed in equally as emphatic and unambiguous language. It is clear that no such power is expressly given to Sue I. B. O'Day or E. W. Banister by the clause of the will quoted; and it would require a very strained construction of the language used to find or infer any such power; for in no event, if ever, is such power to be exercised *unless absolutely necessary or unquestionably advisable,* but that such real estate, which forms a part of the estate of said minors, is to be preserved and not disposed of except under the circumstances and conditions which we have indicated. They are designated as trustees, and each of them while acting as such is vested with full power to manage and control the estates of said minors until their respective majority; but there was no intention on the part of the testator to vest the title to the land in them or to confer upon them the power to sell it, but merely to look after it and to manage and control it for said minors. To hold otherwise would be to do so in contravention of the provisions of the will and the intention of the testator, and in violation of the provisions

of the statute which says that "all courts and others concerned in the execution of last wills shall have due regard to the directions of the will, and the true intent and meaning of the testator, in all matters brought before them." [Sec. 4650, R. S. 1899.]

We do not think the case of Gannon v. Albright, 183 Mo. 238, or any of the cases cited by the guardian *ad litem* of Thomas K. O'Day, which announce the same doctrine, are controlling in the case at bar, for the reason that in those cases the wills were construed as giving to some particular person or persons express power to sell the lands, while to construe the will in this case as conferring absolute power upon said trustees to convey the land devised to Catherine O'Day and John Baldwin O'Day would be contrary to the intent and will of the testator.

Our conclusion is that the judgment should be affirmed. It is so ordered.

All concur.