# Armstrong's Appeal.

63        312
21 SC   206

1. Whenever there is a deficiency of assets to pay both debts and legacies, specific devises and specific legatees shall abate proportionably.

2. A demonstrative legacy has in this respect the privilege of a specific legacy.

3. A demonstrative legacy is the bequest of a certain sum of money to be paid out of a particular fund.

4. A demonstrative differs from a specific legacy in that if the fund out of which it is payable fails, it is still entitled to come on the estate as a general legacy, and it differs from a general legacy, in that it does not abate in that class, but in the class of specific legacies.

5. In marshalling assets for the payment of the debts of a testator, specific devises of land abate proportionably with specific and demonstrative legacies.

6. A testator bequeathed $1200 to each of two daughters from proceeds of land ordered to be sold, and provided that if the land should not produce enough to pay the bequests, they should " be paid out of my estate in general." This implied a preference and priority to the daughters, and that their legacies were to be paid at all events.

[Armstrong's Appeal.]

November 16th 1869. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Appeal from the decree of the Orphans' Court of *Greene county* : In the estate of William Armstrong, deceased; No. 68, to October and November Term 1869.

The decedent died in 1861, having made a will dated August 18th 1852, and three codicils dated respectively, April 15th 1853, April 9th 1858, and February 26th 1851. By his will he made provision for his wife for life, and gave his furniture and other chattels to his daughters, Elizabeth Barckley and Mary Rea, equally, after his wife's death. He devised his real estate, except "the mill property," to his sons Alfred, Russell, William and Joseph, directing his executors to have the real estate, except the mill property, appraised, he then proceeded :—

"My homestead farm to be divided into three parts or parcels, equal in quality, quantity and timber, as nearly as may be; the farm on which my son Russel lives to be appraised and whatever it may be worth more than the other three, that remainder to be equally divided between my sons, share and share alike. It is my will after my real estate is divided and appraised that my sons as above mentioned, have and occupy the same according to their present location in fee simple for ever.

"Item. I direct my executors to sell my mill property at any time at their discretion, within three years after my decease, for the best price they can obtain for it ; then it is my will that my executors pay to my daughters as herein named, the sum of $1200 each, out of the proceeds of such sale. In case the sale amounts to more money than is devised to my two daughters, then it is my will the remainder to be equally divided between my two heirs in general. In case my mill property should not bring the amount devised to my daughters as above, then it is my will their shares of $1200 each be paid to them out of my estate in general. Whatever of my personal property that may be remaining not herein devised, I order and direct my executors to sell the same, and apply the proceeds of such sale to my estate in general, to be equally divided between my heirs."

By his first codicil, he released to his four sons, "all rents, issues and profits, which may be due, or becoming due to me at my decease, arising from the farms they now occupy, and which I have described and given to them in the foregoing will ; and further, it is my will that all the improvements that they, or either of them may have made, or may make, shall not be taken into the equalization or valuation of the before-mentioned bequests."

The second codicil was :—"In addition to the foregoing will and codicil, I give and bequeath to my two daughters, Elizabeth Barckley and Mary Rea, all my bank stock, to be equally divided between them."

[Armstrong's Appeal.]

The third codicil was:—"Whereas, I have loaned to Henry Barckley, intermarried with my daughter Elizabeth, $1193, and $640, paid him for one half-section of land situate in the state of Missouri, for which I have no title; now in case he, the said Henry Barckley, does not refund the money loaned, together with the money paid for the land, or the title, with the interest, &c., then it is my will, and I hereby revoke my will herein and above expressed, so far as it relates to my daughter Elizabeth, charging her with the above money so loaned and paid to her husband, Henry Barckley; and I further give and bequeath to my daughter, Mary Rea, in addition to what I have already bequeathed, a sufficient amount out of the proceeds of the sale of my mill and bank stock and other personal property, to make her equal with Elizabeth in the amount loaned and paid to her said husband, Henry Barckley. Conditioned the said Henry Barckley pays back the money loaned, together with the money paid for the land, or the title for the same, during my lifetime, then I hereby revoke and make void this supplement to my will as above written."

The portions of the real estate devised to Alfred, Joseph and William were each appraised at $5586.60; that devised to Russell was appraised at $4278.91. The mill property was sold for $1415. The executors settled their account, which was confirmed March 20th 1868, showing a balance of $1330.36 due the accountants; the proceeds of the mill property were not included in the account.

Samuel Montgomery, Esquire, was appointed auditor to report from what source the indebtedness of the estate should be paid. The auditor reported that the bank stock bequeathed to the daughters was sold by the executors for $600; and that Henry Barckley did not return the money, or make the title as mentioned in the last codicil; that Mrs. Rea would therefore become entitled to the whole of Mrs. Barckley's share of the proceeds of the mill and bank stock, as all would not make her equal with Mrs. Barckley, according to the codicil.

The question was stated by the auditor to be whether the indebtedness should "be paid out of the proceeds of the mill property and bank stock, or whether it shall be paid by the heirs in proportion to what each has received."

He decided "that the devises and legacies should abate in proportion to their several values for the payment of this debt; that Mrs. Mary Rea is entitled to the proceeds of the sale of the mill property, $1415, with interest on the same from the 30th day of August 1864, subject to any receipts which she may have given for money paid her by the executors, and to $600 received by the executors for the bank stock, with interest from the 30th day of December 1862, subject to receipts for money or for any bank stock which she may have received from the executors; and also,

[Armstrong's Appeal.]

subject to a credit for $132.70, which she should contribute to the payment of debts of the testator."

He concluded his report with a detailed statement of the amount to be contributed by the devisees and legatee respectively.

The court, after exceptions, confirmed the report.

The devisees appealed to the Supreme Court, and assigned the following errors :—

I. The court erred in overruling the exceptions to the auditor's report and in confirming the same, which exceptions and confirmation are as follows, viz. :

1. "The auditor erred in charging the devisees with the payment of any part of the debts.

2. In not paying the debts out of the personal estate, viz. : the bank stock and the proceeds of the mill property.

3. In appropriating to Mary Rea all the bank stock, she having received one-half of the same, and in allowing her the amount loaned and paid to Henry Barckley, and charged to Elizabeth Barckley.

4. In allowing interest from 30th December 1862, to an indefinite period.

5. In allowing interest on Mary Rea's legacy from a period before it was ascertained whether the legacy could be paid, there being no evidence of a tender of a refunding bond by her or any one for her."

II. The court erred in confirming the auditor's report.

*A. A. Purman*, for appellants.—The order to sell the mill was a conversion : Leiper *v.* Thomson, 10 P. F. Smith 177 ; Chew *v.* Nicklin, 9 Wright 84. A testator may charge his debts or such part of his estate as he pleases : Loomis' Appeal, 10 Barr 387.

*R. W. Downey*, for appellee, cited Loomis' Appeal, *supra ;* Hallowell's Estate, 11 Harris 225.

The opinion of the court was delivered, January 3d 1870, by

SHARSWOOD, J.—It was settled in England by Long *v.* Short, 1 P. Wms. 403, that specific devises of land and specific bequests of personalty must abate rateably in case of a deficiency of assets for the payment of the bond debts of the testator, because both lands and chattels were liable in law for those debts, and it was equally the intention of the testator that the legatee should have the chattel, and the devisee the land : 1 Roper on Legacies 254. In this state, where lands have always been assets for the payment of debts by simple contract as well as by specialty, the rule is general—that wherever there is a deficiency of assets to pay both debts and legacies, specific devisees and specific legatees shall contribute proportionably. What is termed a demonstrative legacy

partakes, in this respect, of the privilege of a specific legacy. A demonstrative legacy is the bequest of a certain sum of money, with a direction that it shall be paid out of a particular fund. It differs from a specific legacy in this respect, that if the fund out of which it is payable fails for any cause, it is nevertheless entitled to come on the estate as a general legacy, and it differs from a general legacy in this, that it does not abate in that class, but in the class of specific legacies: 1 Roper on Legacies 153. It is settled by this court that in the marshalling of assets for the payment of the debts of a testator, specific devises of land abate proportionably with specific and demonstrative legacies: Barklay's Estate, 10 Barr 387; Hallowell's Estate, 11 Harris 223.

The legacy to Mrs Rea falls clearly within the class of demonstrative legacies. By the will the sum of $1200 was to be paid to her out of the proceeds of the mill property, and by the codicil she was to have in addition, out of the proceeds of the sale of the mill, bank stock, and other personal property, a sum sufficient to make her equal to her sister Elizabeth, in the amount which the testator had loaned and paid to her husband. There is certainly nothing in the will to evince a different intention. On the contrary, the testator carefully provides that if the sale of his mill property should not produce sufficient to pay the sums bequeathed to his daughters respectively, they were to be paid out of his estate in general; which strongly implies a preference and priority to them, and that their legacies were to be paid to them at all events: Duncan v. Alt, 3 Penna. Rep. 382. To apply any less favorable rule to Mrs. Rea than that which was adopted in this case would most clearly disappoint the intention of the testator, "and cut up his plan of distribution by the roots." While the other devisees and legatee would receive their bequests in full, the entire loss would fall on Mrs. Rea as effectually as if she had been a mere residuary legatee and postponed to them all.

The third assignment of error is contrary to Rule VI., 6 Harris 578, as it raises two different points, and is therefore a waiver of both. It may be observed, however, that the auditor reports that the amount of Mrs. Rea's legacy, ascertained by him, is subject to any receipts for money or. any bank stock she may have received from the executors, and in truth the object of the reference was not to distribute the estate in the hands of the executors, but to ascertain how the balance found against it, and due to the accountants upon the settlement of the personalty, was to be made up. As to the charge of interest from the date of the sale of the mill property and bank stock, respectively, there is nothing in that of which the appellants have any right to complain. The amount of her pro rata contribution to the deficit is properly calculated on the sum due her at the testator's death, as in the case of the others. The executors may have a right to require of her

a refunding bond under the direction of the Orphans' Court before the payment, but that is a subsequent matter. This disposes of the remaining errors assigned.

Decree affirmed, and appeal dismissed at the costs of the appellants.