FRANK SUMNER BLACK and Joseph J. Hunter, Executors, Appellants, v. ALICE M. HUNTER BLACK, Appellant. THE TRUSTEES OF THE SYNOD OF NORTH DAKOTA OF THE PRESBYTERIAN CHURCH as Trustees for Jamestown College, a Corporation, as Beneficiary, Respondents.

(65 A.L.R. 852, 226 N. W. 485.)

502

Opinion filed April 18, 1929.   Rehearing denied August 16, 1929.

*Spalding & Redetzke* and *Pollock & Pollock,* for appellants.

*Knauf & Knauf,* for respondents.

Buttz, District J. We are required to construe certain provisions of the will of William Hunter, deceased. Rev. William Hunter was a pioneer Presbyterian minister of this state, interested in Christian education and had much to do with the reorganization of Jamestown College by the Presbyterian Synod of North Dakota about 1909. He apparently ever after was closely in touch with the affairs of this school and a contributor to its support.

Finding his pledges in arrears and being desirous of paying that debt to the college and to furnish other funds to be used, to quote, "as seed for a new enterprise, namely, the beginning of a foundation for a hospital on the college grounds," he made provision for these matters in a will executed by him December 20, 1922. This will, omitting formal parts, reads as follows:

"*First.* I will and direct that all of my just debts be paid as soon as may be after my decease out of my estate.

"*Second.* . . .

"*Third.* I have deeded to my adopted daughter, Alice M. Hunter Black, the Northwest Quarter (NW¼) of Section Thirty-one (31) in Township One Hundred Fifty (150) North of Range Fifty-six (56) West, and it is my wish that this land be appraised as of the date of my death and in the event that such appraisal does not show the land to

be worth Ten Thousand ($10,000) Dollars, I will and direct that my said daughter be paid the difference between such appraised value and the sum of Ten Thousand Dollars out of the residue of my estate before any division of such residue is made.

"*Fourth.* I have deeded to the Trustees of the Synod of North Dakota, of the Presbyterian Church, the Southwest Quarter (SW¼) of Section Twenty-five (25) in Township One Hundred Fifty (150) North, of Range Fifty-seven (57) West, which said land is now subject to a mortgage, and I will and direct that my Executors pay the said mortgage from funds hereinafter provided for, so that the said land shall go to the said Synod, free and clear from all liens and encumbrances. This said land is deeded to the said Synod for the following uses and purposes. To pay any and all pledges made by me or indebtedness which I owe to Jamestown College, located at Jamestown, North Dakota; that any balance remaining after the payment of such pledges and indebtedness shall be used to establish a hospital to be located on the college grounds of Jamestown College at Jamestown, North Dakota, and to be under the care and supervision of the Trustees of said Synod of North Dakota.

"*Fifth.* . . .

"*Sixth.* To my beloved son, Joseph J. Hunter, I give and devise any interest which I may have or now have in the Southwest Quarter (SW¼) of Section Seventeen (17) in Township One Hundred Fifty-four (154) North, of Range Fifty-seven (57) West, which belonged to my wife, now deceased, and which she desired should go to my said son; and I also give and devise to my said son, Joseph J. Hunter, the Southeast Quarter (SE¼) and the Southwest Quarter (SW¼) of Section Thirty (30) in Township One Hundred Fifty (150) North, of Range Fifty-six (56) West, Grand Forks County, North Dakota.

"*Seventh.* I will and direct that my Executors shall sell the property owned by me and described as follows, to-wit:

"The East one-half (E½) of Lot Five (5) in Block Three (3) of Island Park Addition to Fargo, also known as 360—7th Avenue South, Fargo, North Dakota, and that from the proceeds of such sale, *shall pay all of the indebtedness owed by me at the time of my decease,* the balance, if any, to become a part of the residue of my said estate." (Italics are ours.)

Other provisions make the daughter Alice and the son Joseph residuary legatees and nominate executors.

Some months thereafter the testator died, this will was duly admitted to probate in the county court of Cass county and the executors named therein duly qualified and entered upon their duties.

Eventually the executors made a sale of the property described in paragraph seven of the will, which consisted of a house and lot in the city of Fargo, and which is known in these proceedings as the Island Park property. On this sale, after deducting the mortgage indebtedness against that property, the executors realized approximately $3,490. In the course of administration all or practically all of the proceeds of this property were exhausted by the executors in the expenses of administration, including attorneys' and executors' fees. It is not clear from the record, but apparently there was little other personal property or income to go to the executors. When the final account and petition for distribution was filed in the county court a controversy arose between the Trustees of Jamestown College and other legatees and devisees and the executors as to the rights of the college under paragraphs four and seven of the will. It is the contention of the college that it was entitled to receive its land free and clear of all encumbrances, that it was the duty of the executors to pay the mortgage thereon in full from the proceeds of the sale of the Island Park property, if the proceeds thereof were sufficient, and if insufficient the remainder of such mortgage indebtedness should be paid out of funds to be made from other property of the estate not devised to the college. The position of the appellants is that the testator had no right to direct the use of any portion of his estate for the payment of the mortgage in question or for any other specific purpose in preference to what they claim is the legal right of the executors to use such funds for the payment of the expenses of administration; that he could not give precedence under a legacy to a nonrelative over that which he gave to next of kin; that the executors may of right devote the proceeds of the Island Park property to the expenses of administration and that if such expenses exhaust this fund out of which the mortgage debt on the college land was to have been paid, the college must take its land with the mortgage indebtedness thereon, and, in addition, the quarter section going to the college must bear its due proportion of the debts of the

estate and expenses of administration as may remain after the un-devised property of the estate, including the proceeds of the Island Park property, have been exhausted.

As a solution of the problem thus presented, objections to the ac-counting having been filed, all of the parties joined in a request to the county court for a construction of the will, to the end that the questions presented might be disposed of. This request was granted and a hear-ing thereon duly had before the Hon. Leigh J. Monson, judge of said court, upon which hearing there was before the court the will in ques-tion and its files and records in said estate; there was also taken and made of record the testimony of the witnesses offered by the various parties, and certain exhibits consisting of letters written by deceased to President Kroeze of the college during the testator's lifetime after the execution of the will, the note covering testator's pledges and the note of $3,000 and unpaid coupon notes and the mortgage securing the same, representing the indebtedness against the land devised to the college.

Thereafter the county court entered its "Order of Construction of the Will," wherein that court declared the intention of the testator to be "that said executors should pay from the assets of said estate all of the indebtedness due against the said land . . . from funds and properties of and belonging to the estate of said decedent at the time of his death, first from money acquired from" the sale of the Island Park property, and "in the event of there being insufficient funds ac-quired from the sale of" such property "sufficient more of the property of said estate shall be sold or mortgaged so as to pay the balance there-of, with the costs of administration of this estate," leaving the land going to the Synod for the benefit of the college free of encumbrance. The court specifically stated in this construction that "it' is not the in-tention of the court to pass upon and it does not pass upon any of the other questions raised in the report and the objections thereto, the same being reserved for further hearing in the matter."

Being aggrieved by such construction the appellants herein took the case to the district court of Cass county and upon the record made in the county court, together with additional testimony in the district court, the latter court made its decree construing the will, wherein it affirmed the construction placed upon said will by the county court and

further found that the Island Park property had been sold by the executors and that instead of applying the proceeds of said sale as that court and the county court conceived they ought to have applied the same, they had paid therefrom $2,500 by way of attorneys' fees and fees for handling the estate and the further sum of $499.63 to themselves as executors' fees, all as expenses of administration, and further found that the funds acquired from the sale of the Island Park property "could be used only for the purposes of paying debts existing at the time of the death of said decedent." The district court also found that decedent's estate other than the college property consists of additional lands of the value of $26,500, being many thousands of dollars more than is sufficient to pay the actual, necessary and legal expenses incurred or to be incurred in the matter of operating and closing of the estate; that the $3,000 mortgage and interest thereon against the college land was an indebtedness of the testator at the time of his death and that decedent otherwise owed on his death $2,521.11, and that all of such indebtedness should have been paid, so far as possible, from the proceeds of the Island Park property, and not applied to the expenses of administration as had been done by the executors, and that the proceeds of the Island Park property so held to have been misapplied "should be returned to the treasury of said estate to be used for the purposes set forth and designated in and by the terms of said will of said deceased."

In this court appellants urge that the district court erred in requiring a repayment of attorneys' and executors' fees, in relieving the proceeds of the Island Park property from the payment of expenses of administration, in charging property devised to next of kin with debts in preference to that which goes to nonrelatives, in holding that expenses of administration may be postponed and subordinated to the payment of indebtedness existing at the time of his death, particularly the mortgage indebtedness against the college land, in holding that any portion of the estate could be specifically devised to the payment of debts before expenses incurred in the course of administration were paid, and that it was error to make the mortgage on the college land "a preferred claim ahead of other legacies, expenses of administration, and other indebtedness."

What the testator desired to do is not particularly difficult to under-

stand from a reading of the will itself; and that intention is reinforced by the testimony taken upon the hearings in the courts below. It was undoubtedly the thought of the testator that the Island Park property would sell for a sufficient sum to pay all of his debts owing by him at the time of his death, including the mortgage on the college land. But a change of circumstances made this impossible because of shrinkage in value of the Island Park property or an indebtedness in excess of that contemplated,—either one or both. The net proceeds from the Island Park property will liquidate but approximately half of the indebtedness which he intended to be paid thereby.

Appellants strenuously contend that notwithstanding the direction of the testator the court is bound by the provision of § 8755, Comp. Laws 1913, which reads:

"The acknowledged debts and charges must be paid in the following order:

"1. The necessary expenses of the administration.

"2. The expenses of the last sickness and funeral.

"3. Allowances made to the family in excess of the exempt property.

"4. Debts having preference by the laws of the United States.

"5. Debts which are liens upon specific property whether by judgment, mortgage or otherwise in the order of their priority.

"6. All other demands against the estate."

They urge that this order of payment of the debts and charges of administration is mandatory and cannot be changed even by the will of the testator. They particularly stress the point that the expenses of administration, to the payment of which the greater portion of the proceeds of the Island Park property has gone, must be paid before any debts are paid and that, therefore, their procedure has been correct. They rely upon the last sentence of § 5722, Comp. Laws, 1913, which declares: "Before any debts are paid the expenses of the administration and the allowance to the family must be paid or provided for." This, however, disregards other provisions of this same section which seem to us decisive of this question, and which read as follows:

"The property of a testator, except as otherwise specifically provided in this code and the probate code, must be resorted to for the payment of debts in the following order:

"1. *The property which is expressly appropriated by the will for the payment of the debts.*

"2. Property not disposed of by the will.

"3. Property which is devised or bequeathed to a residuary legatee.

"4. Property which is not specifically devised or bequeathed; and,

"5. All other property ratably."

Then follows the provision regarding the payment of expenses of administration to which appellants direct our attention and which we have quoted. Subdivision one, which we have italicized, expressly provides that the testator may do the very thing that Mr. Hunter did. If any question remained on this subject it would seem to be settled by § 8731, Comp. Laws 1913, which reads:

"If the testator makes provision by his will or designates the estate to be appropriated for the payment of his debts, the expenses of administration or allowance to the family, they must be paid according to such provision or designation out of the estate thus appropriated so far as the same is sufficient."

The testator having by the provisions of his will pointed out the proceeds of the Island Park property as a fund for the payment of all of his indebtedness owing at the time of his death, that is the fund and the only fund from which the executors may pay such debts "so far as the same is sufficient" to do so. Surely a testator must be honest before he is generous and he cannot by will so direct the disposition of his property as to avoid the payment of his just debts, the family allowance, or necessary expenses of administration; but the records and files of the county court showed the property in the estate, other than the Island Park proceeds, was many thousands of dollars more in value than ample to take care of all of the charges of administration and to pay the remainder of decedent's indebtedness. Thus confronted it was the duty of the executors to follow the direction of the testator by using the property which he "expressly appropriated by the will for the payment of his debts." Section 5722, supra. And the courts below were, therefore, correct in their direction in that respect. If, as urged by appellants, the district court made its decree broader than the somewhat narrow question presented by the appeal, in that it directed the money retained by counsel as attorneys' fees and by the executors for their services to be returned to the funds of the estate, there

was no error in such direction because it necessarily follows that if such funds have been improperly applied the estate must be reimbursed by the executors that an application thereof may be made in accordance with the provisions of the will.

When the proceeds of the sale of the Island Park property shall have been applied in accordance with the direction of the testator nearly half of his debts will still be unpaid, including a like portion of the mortgage on the college land. The proceeds of the Island Park property being insufficient for the purposes indicated in the will, from what part of the estate may the deficit be made? Does the Synod take the land in question by deed or devise? If by deed, then title vested and this land never became liable for these general debts of the estate, nor would it be liable to contribute with other devises to the unpaid portion thereof after making the application we direct. The burden is upon the Synod to prove a delivery of the deed; without a delivery there can be no transfer of title. Our statute provides that "a grant takes effect so as to vest the interest intended to be transferred only upon its delivery by the grantor." Comp. Laws 1913, § 5495. There is nothing in the record to show that the deed was ever delivered. In one paragraph of the will we read: "I have deeded to the Trustees of the Synod . . . this land;" and in a letter dated December 25, 1922, written to the president of the college about his subscription notes he says, ". . . these notes are secured by the quarter section which I have deeded to the college, and their payment must come from the proceeds of the sale of that property," and again in the same letter: "If they are not paid in my lifetime they must be paid from the quarter section which has guaranteed them. My gift to the college was this quarter section." True, there need not be a manual delivery of a deed to make a transfer. Delivery may be to a third person to go to the grantee on the maker's death, in which case "the better rule is that the deed is immediately operative as against the grantor, and that the condition that the delivery to the grantee shall not be made until after the grantor's death is equivalent to the reservation of a life estate in his favor in the land itself." Arnegaard v. Arnegaard, 7 N. D. 475, 495, 41 L.R.A. 258, 75 N. W. 797. Decedent never in any way parted with the deed. There are only the declarations of the will and the letters we have quoted. They are not inconsistent with a testamentary

disposition. He continued in possession of the land and received its rents and profits, as have the executors. In the letter referred to, immediately following the sentence we first quoted, he says: "Of course, in case I live for several years, I hope to sell some of this property and pay the notes, principal and interest, but I have not hitherto been able to do so." And further on: "You say a man should be his own executor, and to this I fully agree. It is my intention, if in the good providence of God I should live any length of time, to sell as much property as I can and pay debts." From these declarations and his concomitant acts there appears to have been no intention on his part to place the deed beyond his control. He even contemplated being "his own executor" through a possible sale of the property and a disposition of the proceeds in a manner similar to the directions to his executors.

If there was a delivery at all it must have been a constructive delivery because no actual delivery of the deed is claimed. Section 5500, Comp. Laws of 1913, reads:

"Though a grant is not actually delivered into the possession of the grantee, it is yet to be deemed constructively delivered in the following cases:

"1. When the instrument is by the agreement of the parties at the time of execution understood to be delivered and under such circumstances that the grantee is entitled to immediate delivery; or,

"2. When it is delivered to a stranger for the benefit of a grantee and his assent is shown or may be presumed."

Evidently subdivision two has no application and under subdivision one there must have been an agreement between the college or its trustees and the maker whereby it was understood that the deed was delivered and the surrounding facts and circumstances must have been such as to have entitled the trustee to an immediate delivery. The only proofs before us, the will itself and the testator's letters construing the same, evidence no agreement or understanding that the deed was to be considered as delivered, nor would these proofs entitle the grantee to an immediate delivery of the instrument. McManus v. Commow, 10 N. D. 340, 87 N. W. 8. "Unless . . . we are able to discover from this record that the grantor absolutely parted with all control over the deed, and intended it to operate as a present conveyance, subject to his life interest, we must adjudge the instrument void for want of

delivery." Arnegaard v. Arnegaard, supra. And so are the decided cases from other jurisdictions. It is held that a deed left among other papers with a letter showing an intention the land described should go to the grantee on the death of the grantor is not a delivery. Stone v. French, 37 Kan. 145, 1 Am. St. Rep. 237, 14 Pac. 530. See also: Walter v. Way, 170 Ill. 96, 48 N. E. 421; Osborne v. Eslinger, 155 Ind. 351, 80 Am. St. Rep. 240, 58 N. E. 439; Fifer v. Rachels, 27 Ind. App. 654, 62 N. E. 68; Miller v. Murfield, 79 Iowa, 64, 44 N. W. 540; Walls v. Ritter, 180 Ill. 616, 54 N. E. 565. We conclude there was no delivery, that the deed as such was of no effect, that the whole transaction was a testamentary disposition; and that the college land is ratably liable with other specific devises for the testator's debts remaining after exhausting the Island Park funds.

Appellants cite § 5724, Comp. Laws 1913, which provides that "legacies to husband, widow or kindred of any class are chargeable only after legacies to persons not related to the testator;" they insist that the direction to pay the mortgage debt against the college land is a demonstrative legacy to a stranger, which, in the absence of other funds, must contribute its pro rata share toward the payment of the debts of the estate before resort may be had to legacies or devises to next of kin. Such contribution would wholly exhaust the amount involved. The testator himself characterized it not as a legacy but as a debt, providing that it should be paid out of funds to be made as provided by paragraph seven of his will, from which funds the executors were to "pay all of the indebtedness owed by me at the time of my decease." In making the provision for the payment of this mortgage he was considering it from the standpoint of a debt, the lien of which he desired to remove from the land going to the college. He was not thinking of the mortgage in terms of a legacy or gift to the school. The thing he was giving to the college was a specific tract of land, a devise of the same class as his other devises. Then, too, the executors in the condition of this estate have no legacies to kindred with which to deal: there is no residue out of which to pay legacies as directed, either to kindred or others. They deal with *devises* only. The question of a preference in *legacies* between those of kin and strangers is not in the case.

Appellants urge that the mortgage debt against the college land can-

not be paid by the executors since no claim was presented to them and to the court to be allowed within the time provided by the law then in force, and h ice it is barred. Comp. Laws 1913, § 8736. If this payment was to be made under the general provisions of the will for the payments of debts there would be much force in this argument. But in this insta ce we do not need to concern ourselves about the filing of a claim. The testator took care of that by distinctly providing "I will and direct that my executors pay the said mortgage from funds hereinafter provided so that said land shall go to said Synod free and clear from all liens and encumbrances." In the last line of their brief appellants say this "is nothing more than a provision for the payment of the mortgage with his other debts." He thus made it unnecessary for the college or its trustee, the Synod, to present this claim to the executors or to the court. So far as the proceeds of the Island Park property will pay the same pro rata with the proved debts owing at his death, it will be paid by the executors; as to the part of such indebtedness which such fund is insufficient to take care of, the payment thereof must be subordinated to the payment of the charges of administration. This works no difference in the ultimate result, however, inasmuch as there is ample property in the estate to pay all indebtedness as well as the charges of administration.

It necessarily follows that we are not agreed with the courts below that in the event the funds from the Island Park property are insufficient to pay all of the debts, nevertheless, the total indebtedness represented by the mortgage on the college land must be paid from property of the estate other than the land devised to the college. As we have seen, the property "expressly appropriated by the will for the payment of the debts" has proved insufficient. The other personal estate amounts to but little and is wholly insufficient to discharge the remainder of the debts and the expenses of administration. All the other real estate has been specifically devised. Therefore § 8732, Comp. Laws 1913, is not applicable since there is no "portion of the estate not devised or disposed of by will," which can be appropriated for the payment of debts. It follows that the rule of § 8733, Comp. Laws 1913, is appropriate in the precise situation we have in this case. It reads:

"The estate real and personal given by will to legatees or devisees

is liable for the debts, expenses of administration and allowance to the family in proportion to the value or amount of the several devises or legacies, but specific devises or legacies are exempt from such liability if it appears to the court necessary to carry into effect the intention of the testator and there is other sufficient estate."

By this section we have adopted in this jurisdiction the doctrine of spreading such deficiency over all devises. Assuming there will be no residuary estate, all of the devises made in this will, including that made to the college, must bear their proportionate share of that part of the indebtedness of the deceased which he owed at the time of his death, which remains unpaid after exhausting the net proceeds of the Island Park property. This the county court will ascertain and pro-rate in proportion to the value of the several devises as of the date of the death of the testator; and in its final decree the county court will settle the amount of the several liabilities of the devisees and legatees and the amount that each must contribute toward the payment of such debts, including the balance of the mortgage debt on the college land. This direction, we believe, is consistent with the purposes of the testator. It is apparent that his thought was that all the indebtedness would be paid by funds derived from the Island Park property. This has become impossible because of the deficiency in that fund; the testator apparently contemplated that all of his specific devises would be exonerated from the payment of debts, not that one devise should be free from burden while another or others should bear the whole. By thus pro-rating the remaining indebtedness the testator's purposes are as little interfered with as possible. Maybury v. Grady, 67 Ala. 147; Manlove v. Gaut, 2 Tenn. Ch. App. 410; Armstrong's Appeal, 63 Pa. 312. Nor does it appear that the college has any equities superior to those of other devisees. In the circumstances of this case the college must in part take its land *cum onere* since that burden cannot be satisfied in whole out of the fund provided for that purpose in the will. Comp. Laws 1913, § 5685. Gould v. Winthrop, 5 R. I. 319; Glass v. Dunn, 17 Ohio St. 413; O'Day v. O'Day, 193 Mo. 62, 4 L.R.A.(N.S.) 922, 91 S. W. 921.

What we have said disposes of the assignments of error germane to the question presented. The case is remanded to the district court with

direction that it modify its decree and direction to the county court in accordance with this opinion.

BURKE, Ch. J., and BIRDZELL, NUESSLE, and CHRISTIANSON, JJ., concur.

BURR, J., did not participate; Honorable C. W. BUTTZ, a judge of the Second Judicial District, sitting in his stead.