In the Matter of the ESTATE of Birdine
FLETCHER, Deceased.

A. J. SIMLER, Plaintiff in Error,

v.

W. H. WILSON, the Executor of the Estate
of Birdine Fletcher, Deceased, Defendant
in Error.

No. 37365.

Supreme Court of Oklahoma.

Jan. 15, 1957.

Rehearing Denied March 12, 1957.

Leslie L. Conner, Phil E. Daugherty and John B. Ogden, Oklahoma City, for plaintiff in error.

Fred E. Suits, Mary L. Weiss, J. B. Dudley, Oklahoma City, for defendant in error.

CORN, Vice Chief Justice.

This appeal presents questions arising from the litigation involving the will of Birdine Fletcher, who died July 13, 1952. The matters hereafter delineated sufficiently disclose the factual situation out of which arose the question herein considered.

The will contained 22 separately numbered paragraphs, which made the following disposition of testatrix' property (stating only the substance of certain of these).

"1. I will and direct the payment of all of my just debts and obligations of every kind and character, including funeral expenses and expenses of

my last illness, and taxing obligations, State and Federal, and the sums hereinafter mentioned and set out for Mass Offerings, as soon as possible after my death.

"2. I will and direct the payment of $1600.00 as Mass Offerings to be distributed to the following: To His Excellancy, Bishop Eugene J. McGuinness, Bishop of Oklahoma City and Tulsa, and/or his successor in office, the sum of $1000.00, to be distributed by him as he deems best; To the Carmelite Fathers, 1125 South Walker, the sum of $100.00 for three (3) set of Gregorian Masses and ten other Masses; to Father James H. Ross, Oklahoma City, Oklahoma, $200.00; Carmelite Fathers, Marylake Novitiate, Hinsley, Arkansas, $100.00 and ask that three set of Gregorian Masses and 10 others, be said immediately; to Msgr. Gilbert Hardesty, $100.00. It is my wish and I do so direct immediate payment of the above.

"3. Paragraphs No. 3-16, inclusive contained cash bequests of from $1.00 to $500.00 to friends and relatives, including bequests of $1.00 'this amount and no more' to her brother, plaintiff herein.

"17. To Saint Anthony's Hospital, Oklahoma City, Oklahoma, $50,000.00.

"18. To Saint Patrick's Mission, Anadarko, Oklahoma, $5000.00.

"19. To Saint Joseph's Orphanage, Oklahoma City, Oklahoma, $10,000.00.

"20. All of the rest, residue and remainder of my property, both real and personal, wherever situated, I will and bequeath to Mount Alverno Convent of Maryville, Missouri, St. Francis Hospital, Maryville, Missouri, and St. Anthony Hospital of Oklahoma City, Oklahoma, share and share alike."

Attached to this will was a list of testatrix' property, wherein it appeared testatrix then had U. S. Government Bonds ($85,-800) and cash on hand ($10,546) totaling more than $96,000, as well as secured promissory notes for $28,065. The inventoried value of the listed personal property at the time of her death amounted to $125,-281.82. The total of the various cash bequests in the will amounted to $69,009.

After admission of this will to probate (October 2, 1952) the contestant, plaintiff herein, appealed to the district court where judgment was rendered sustaining this order of the county court. Upon appeal to this court the judgment was affirmed. See In re Fletcher's Estate, Okl., 269 P.2d 349.

While the appeal from the county court's order was pending in the district court plaintiff instituted a declaratory judgment action in the Federal District Court, seeking determination that the devise of realty was void by reason of the constitutional prohibition, Const. art. 22, Sec. 2, against a religious corporation receiving and owning realty in certain instances. From an adverse judgment plaintiff appealed to the Circuit Court of Appeals, where judgment of the Federal District Court was reversed and the cause remanded. See Simler v. Wilson, 10 Cir., 210 F.2d 99. The effect of such judgment was that the farm land in Caddo county was taken out of testatrix' residuary estate and title thereto vested in this plaintiff.

Numerous other actions were filed in the Federal Courts restraining the executor, defendant herein, from proceeding in the state courts. From adverse judgments plaintiff appealed to the Circuit Court of Appeals, where a consolidated judgment (in 3 cases) was entered purportedly effectuating distribution of the estate. The defendant executor's application for writ of certiorari to the U. S. Supreme Court was granted on November 14, 1955, and an order entered vacating the judgment of the Circuit Court, and reinstating the judgments of the Federal District Court. See Wilson v. Simler, 350 U.S. 892, 76 S. Ct. 153.

November 30, 1954 the county court entered a decree allowing the final account, determining heirs and making final dis-

tribution of the estate. The final account reflected a distributable estate of $322,705.51, including the oil producing farmland at the appraised value of $150,000. Comprising a substantial portion of the estate was the sum of $146,683.49 in cash, of which amount $69,033.39 represented oil income from the farms during the period from July 13, 1952 to March 30, 1954.

So far as concerned herein the county court found testatrix had made valid disposition of all her property except the Caddo county farm, as to which she died intestate, and this property passed to plaintiff, who was her sole heir. The county court further found:

"That decedent in her will appropriated no property for the payment of debts, expenses of administration or legacies, and that therefore all of said debts, expenses, including estate and income taxes and legacies must be paid from said farm, together with the rents and royalties which have accrued therefrom since the death of decedent, which is the only property of decedent not disposed of by will; all as provided by Section 3 and 4, Title 84, Okla.Stat.Ann.

"It Is Further Ordered that the total debts and expenses of administration, as allowed herein, except the balance of estate and income taxes, which cannot now be definitely determined, are $58,700.92; that the specific legacies provided in the will as hereinafter shown total $69,009.00, with interest on said legacies from July 13, 1953, to March 30, 1954.

"It Is Further Ordered that the farm in Caddo county herein described and the rents and royalties therefrom which have accrued since July 13, 1952, are subject to the payment of all debts, expenses of administration, including estate and income taxes, and all specific legacies, with interest to March 30, 1954. It is the intention to distribute title to said farm in A. J. Simler free and clear of all obligations of any

nature whatsoever except as herein set out."

The expenses allowed did not include undetermined estate and income taxes, to cover which the county court ordered reservation of $25,000 from the intestate property. The decree then provided distribution of the Caddo county land to plaintiff, with all income therefrom after July 13, 1952, after payment of "all debts, expenses of administration, including taxes, and all legacies with accrued interest." The order also decreed distribution to the named legatees, and set over to the residuary legatees the residuary estate.

Subsequently (December 9, 1954) the county court entered an additional statement, by way of clarification or amendment of the original order, to the effect that since the farm had not been disposed of by the will, it was necessary to resort to the farm and income therefrom for payment of all debts, taxes and expenses of administration by reason of the provision of 84 O.S.1951 § 3(2); for the same reason it was necessary to resort to this property for payment of all legacies under the provisions of 84 O.S.1951 § 4(2); that the court had intended to decree that plaintiff would be entitled to the farm, and income since July 13, 1952, after satisfaction of all legacies as well as costs, expenses of administration and taxes.

Plaintiff gave notice of appeal to the district court from the above decree, as did one of the corporate legatees, St. Anthony's Hospital, and also the attorneys representing different defendants, who appealed (upon the ground of inadequacy) from the portion of the order fixing fees. The two latter appeals were dismissed and are of no further concern herein.

Plaintiff appealed upon a question of law, based upon the court's application of the statutes above mentioned. The contention was that these statutes were inapplicable to intestate property passing to plaintiff under the law of descent, pursuant to the Federal Court judgment, which prohibited the residuary legatees from taking

the farm land or any part thereof; that the county court was without jurisdiction to try title to such property, or to place a lien thereon.

After the appeal was pending in the district court the executor (January, 1955) paid all debts, taxes, expenses of administration and the legacies with accrued interest, out of funds in his hands. The total amount paid by the executor was approximately $158,000, slightly more than $73,000 of this amount representing payment of the pecuniary bequests and accumulated interest.

Determination of the appeal by the district court was delayed by pendency of three cases before the Circuit Court of Appeals. In June, 1955 that court entered a consolidated judgment which, in effect, assumed control of the probate proceedings and made distribution of the estate by charging the principal part of debts, expenses and legacies against the residuary legatee, enjoining such legatees, or any one claiming by or through them, from directly or indirectly claiming any right, title, interest or lien to the property or income therefrom accruing subsequent to July 13, 1952, and enjoining further litigation of the matter in the state courts. As noted, upon application for certiorari, the consolidated judgments were vacated, and the judgments of the Federal Court, denying plaintiff relief in these three cases, were reinstated.

Thereafter the district court heard the case on appeal and affirmed the judgment and decree entered by the county court, and it is from this judgment that the present appeal was taken.

■ The argument for reversal of the judgment is presented under six propositions. To uphold the propriety of the judgment rendered, defendant presents an extensive argument which, as with the plaintiff, is supported by numerous citations and quotations of authority. The conclusion reached hereafter makes it unnecessary to consider each separate contention, or the numerous authorities relied upon by the parties as sustaining their respective positions. We decline to express an opinion upon abstract questions, or those which do not arise upon existing facts or rights.

The scope of the discussion may be narrowed considerably by brief summation of the position of each party to the appeal. The statutes in question, 84 O.S.1951 §§ 3 and 4, provide as follows:

"3. Order of resort to property for payment of debts, administration expenses and allowances.—The property of a testator, except as otherwise especially provided in this code and in the chapter on civil procedure must be resorted to for the payment of debts in the following order:

"1. The property which is expressly appropriated by the will for the payment of the debts.

"2. *Property not disposed of by the will.*

"3. Property which is devised or bequeathed.to a residuary legatee.

"4. Property which is not specifically devised or bequeathed, and,

"5. All other property ratably. Before any debts are paid, the expenses of the administration and the allowance to the family must be paid or provided for."

"4. Order of resort to property for payment of legacies.—The property of a testator, except as otherwise specially provided in this code and under civil procedure, must be resorted to for payment of legacies in the following order:

"1. The property which is expressly appropriated by the will for the payment of the legacies.

"2. *Property not disposed of by the will.*

"3. Property which is devised or bequeathed to a residuary legatee.

"4. Property which is specially devised or bequeathed."

■ The plaintiff's position simply is that both the probate court and the district court erred in holding that the statutes, supra, required resort to the farm land, the devise of which failed under the terms of the will for payment of all debts, expenses of administration, and the pecuniary legacies. In support of this argument plaintiff relies upon Rhinehart v. Rhinehart, 98 W. Va. 93, 126 S.E. 402, 42 A.L.R. 649, based upon the recognized general rule that where the testator bequeaths pecuniary legacies and thereafter gives the remainder of the estate both real and personal to a residuary legatee, the pecuniary legacies are payable first from the personalty, and if there is a deficiency of personalty, then from realty passing under the residuary clause.

Defendant insists the judgment, affirming the probate court's order, must be sustained under the following applicable statutes: 58 O.S.1951 §§ 381, 463, 471.

"§ 381. Property not exempt may be sold for debt.—All the property of a decedent, except as otherwise provided for the homestead and personal property set apart for the surviving wife or husband and minor child or children, shall be chargeable with the payment of the debts of the deceased, the expenses of the administration, and the allowance to the family. And the property, personal and real, may be sold as the court may direct, in the manner hereinafter prescribed. There shall be no priority as between personal and real property for the above purposes."

"§ 463. When provisions of will are insufficient.—If the provisions made by the will, or the estate appropriated therefor, is insufficient to pay the debts, expenses of administration, and family expenses, that portion of the estate not devised or disposed of by will, if any, must be appropriated and disposed of for that purpose according to the provisions of this article."

"§ 471. Estate liable for debts.—The estate, real and personal, given by will to legatees or devisees, is liable for the debts, expenses of administration, and family expenses, in proportion to the value or amount of the several devises, or legacies, but specific devises or legacies are exempt from such liability if it appears to the court necessary to carry into effect the intention of the testator, and there is other sufficient estate."

"84 O.S.1951 §§ 2, 3, 4.

"§ 2. All property of intestate subject to debts.—When a person dies intestate, all his property, real and personal, without any distinction between them, is chargeable with the payment of his debts, except as otherwise provided in this code and under civil procedure."

And 84 O.S.1951 §§ 3, 4, quoted heretofore.

Defendant points out that these statutes came into our code from California, by way of North Dakota, which state's probate code was adopted by our Legislature; the courts of those states apply the declared statutory rule that property not disposed of by will must be resorted to first for payment of debts against an estate, to make certain the dispositions made by the testator will be effective. Numerous decisions, particularly from California, are cited as disclosing adherence to the rule. It is interesting to note that in all these cited cases, with the exception of In re Patterson's Estate, 155 Cal. 626, 102 P. 941, 26 L.R.A.,N.S., 654, the only question involved was the order of resort to property for payment of debts and costs of administration where the will contained no appropriation therefor, but sufficient property was bequeathed the residuary legatee to satisfy such charges. The noted exception arose in an action brought to establish a will destroyed in the San Francisco fire. The court found testamentary disposition of certain personalty under the lost will was not established, and that such personalty became intestate property

which was subject to payment of debts, costs of administration and a small pecuniary legacy, before the residue passed to the heirs.

The decisions cited and quoted from by the parties in support of their respective positions, do not, in our opinion, encompass the determinative question presented. Plaintiff's position would be tenable if determination of the question involved only the application of the statutes governing probate procedure, without consideration of our statutes relating to wills. Likewise, defendant's argument might be conclusive if examined solely in the light of the two statutes principally relied upon as determinative, without resort to other statutory provisions relating to wills, as applied to the testamentary instrument under consideration. For such reasons extended discussion and analysis of the cited cases is unnecessary.

■ We are of the opinion proper disposition of this appeal turns upon inquiry into matters not directly presented heretofore. To aid in such consideration attention must be directed to matters hereafter enumerated.

1. By reason of the manner of acquisition of the entire code relating to probate procedure and wills, no controlling guides are available in ascertaining the Legislative intent in adoption of these two portions of our code, other than ordinary rules relative to construction to be given to statutes adopted from another state.

2. Comparison of the statutes governing probate procedure with the general statutes relating to wills reflects some grounds of conflict between such provisions, not resolved by prior decisions.

3. Failure of a will provision, by reason of lapse, ademption, or invalidity of a devise (bequest), resulting in partial intestacy, does not affect the validity of the instrument in other respects. 84 O.S.1951 § 151; In re Revard's Estate, 178 Okl. 524, 63 P.2d 973.

4. No authority appears to the effect that the statutes, 84 O.S.1951 §§ 3 & 4, are of mandatory application in every instance where a decedent dies intestate as to part of an estate, without regard to other factors.

5. Neither Legislative expression of intent nor judicial construction exist to aid in arriving at a conclusion in respect to superiority, or priority, of the application of the statutes involved.

With these matters in mind we turn to consideration of the question presented by this appeal. The question simply is whether the probate court properly charged the intestate property with all debts, costs of administration and legacies under section 3(2) and section 4(2), supra.

Since these provisions were adopted from North Dakota, it is defendant's theory that we should adopt and apply the judicial construction of that jurisdiction relative to such statutes. Upon this basis defendant relies upon the decision in Black v. Black, 1923, 58 N.D. 501, 226 N.W. 485, 65 A.L.R. 852, 853, as pronouncing the law applicable to this case. And, decisions of the California court, from which state these provisions originated, are cited in further support of the construction for which defendant contends.

■■ The following principles destroy the force of this argument. The statutes under consideration, taken from the North Dakota code, were adopted by our Legislature in 1890. The rule is that a statute adopted from another state and which, at the time of adoption, had been construed by the highest court of the parent state is presumed adopted as so construed. Ciesler v. Simpson, 187 Okl. 641, 105 P.2d 227. However, the reported cases from North Dakota do not disclose judicial construction of these provisions prior to the time of adoption by our Legislature. In this situation the rule is that decisions construing a statute adopted from another state are not binding upon this court, where these decisions were decided long after adoption of the statute in this state. Nat'l. Supply Co. v. Dunn, 198 Okl. 50, 174 P.2d 914. The decisions from North Dakota upon this

question, at best, would be persuasive only. And, it would follow that the decisions from the California court should not be accorded any greater importance under the circumstances.

We are convinced, therefore, that the statutes in question are to be considered and applied herein in conjunction with other pertinent provisions of our own probate code, and in a manner consonant with reason and justice when measured by the true intention evidenced by testatrix in the testamentary instrument.

First to be considered herein is that part of the probate court order charging the intestate property with all debts and expenses of administration under section 3, subdivision 2, supra. Since this appeal presents only a question of law, involving the court's application of the statute, no basis exists for considering whether certain included items properly were charged and allowed as debts, or expenses of administration.

The provisions of the probate code, Secs. 381, 463, 471, supra, as well as 84 O.S.1951 § 2, clearly charge all of a decedent's property, without distinction between personalty and realty, with liability for payment of debts, costs of administration and family allowances. The statutory order of resort to decedent's property for payment of these charges first specifies property expressly appropriated for this purpose.

Casual reading of the will reflects complete absence of language evincing testatrix' intention to appropriate property expressly for this purpose. And, where the statutes make mandatory provisions for payment of debts, etc., testamentary direction that this be done is surplusage and meaningless. Although recognized generally that there may be testamentary provision for a different order of resort to property to pay debts, this intention must clearly appear. See generally 57 Am.Jur., Wills, Secs. 1169–1468, 1471–1472.

The provision in this will relating to debts and costs was directory only, and in no manner can be construed as clearly evidencing testatrix' intention to appropriate any portion of her estate to pay necessary debts, costs, etc. In view of this fact the conclusion is inescapable that the proper order for payment of these charges against the estate required resort to property not disposed of by the will. We are of the opinion the probate court correctly applied the statute, 84 O.S.1951 § 3(2), in determining the order of resort to property for payment of debts, costs of administration, etc.

A matter necessitating separate consideration arises in connection with the probate court's application of the statute, Sec. 4(2), supra, in determining the order of resort to property for the payment of legacies, and ordering the numerous pecuniary bequests charged against the intestate property. At this point it should be noted that the county court, the district court, and the parties to this litigation, have considered and treated the monetary bequests as "specific legacies." Our statute, 84 O.S.1951 § 1, defines the classes of legacies:

"1. Legacies classed.—Legacies are distinguished and designated, according to their nature, as follows:

"1. A legacy of a particular thing, specified and distinguished from all others of the same kind belonging to the testator is specific; if such legacy fails, resort cannot be had to the other property of the testator.

"2. A legacy is demonstrative when the particular fund or personal property is pointed out from which it is to be taken or paid; if such fund or property fails in whole or in part, resort may may had to the general assets as in case of a general legacy.

"3. An annuity is a bequest of certain specified sums periodically, if the fund or property out of which they are payable fails, resort may be had to the general assets, as in case of a general legacy.

"4. A residuary legacy embraces only that which remains after all bequests of the will are discharged.

"5. All other legacies are general legacies."

A general legacy is one of quantity that may be satisfied out of the general assets of the estate without regard to any particular fund or thing, and not distinguished from others of a like kind. A demonstrative legacy is a bequest of quantity, i. e.—money, payable from a particular fund, but differs from a specific legacy in that if this fund fails the bequest may be satisfied out of the general assets of the estate as in the case of general legacies. Specific legacies are bequests of a particular fund, chattel or portion of an estate, distinguishable from the remainder of the property, and differentiated from other articles or funds of the same or similar nature. See generally 57 Am.Jur., Wills, Secs. 1401, 1402, 1403; 69 C.J., Wills, Secs. 2085, 2086, 2087. Judicial definitions of the classes of legacies and decisions declarative of what comprises a particular type of legacy by reason of the language of the will are so numerous as to preclude citation of authority.

The statutory classification reflects that these pecuniary bequests (in the present will) were not specific legacies. Under the statute they must be classified either as demonstrative or general legacies. In the present case no need arises for precise definition of the type of legacy intended by the testatrix, there being no issue between the various legatees in respect to this matter. It is sufficient to point out, in view of the conclusion reached hereafter, that testator's plain intention was that such bequests be paid before the residuum vested in the residuary legatees. The foregoing is of importance only in considering the matter of testatrix' intention. The controlling question is whether the probate court's application of the statute was correct under the circumstances of the case.

As mentioned, the present appeal is upon the question of law. The inquiry as to this particular portion of the appeal, however, is not so much a question of law as a question of fact. The proper solution appears to turn principally upon the question of the testatrix' intent, which is a question of fact to be ascertained from consideration of all the provisions of the will. Such intent, in fact, need not be declared by express terms, it is sufficient if it can be inferred clearly from the entire instrument. Malone v. Herndon, 197 Okl. 26, 168 P.2d 272.

Precise rules for construction of wills are provided by our statutes. 84 O.S. 1951 §§ 151–185 inclusive. These rules are of paramount consideration in all questions involving wills. The cardinal principal of construction is to ascertain and give effect to the testatrix' intention, either to the full extent, or as far as possible. This intent is to be derived from the language of the will, and considering the instrument as a whole, and the different provisions in relation to one another. In In re Everhart's Estate, 208 Okl. 101, 253 P.2d 174. And, attendant circumstances may be taken into consideration in ascertaining the true intent.

When the provisions of the Fletcher will are examined, and measured by established rules of construction, no doubt remains as to what testatrix intended. By the terms of her will testatrix made it clear that she knew the nature and extent of her property, and intended to make testamentary disposition thereof. In re Fletcher's Estate, supra. The instrument directed entire disposition of her affairs, provided numerous pecuniary legacies, and combined the remainder of her estate, real and personal, for the benefit of the residuary legatees. Attached to the will at the time of execution was a list of her property, which disclosed that she was cognizant of the fact that she had personal property on hand of a value far in excess of the pecuniary legacies. The form of the instrument, coupled with the recitation of the extent of her personal property, dis-

closes her evident intent that the various monetary bequests should be discharged therefrom, and the remainder of the estate should comprise the residue. After having enumerated the various bequests, and having shown the possession of personalty of a value greatly beyond the amount necessary to discharge such bequests, it would have been redundant for testatrix to have added language directing payment thereof out of her personal estate. The fact that the will directed "immediate payment" of the bequests for charitable uses (sums given for Mass offerings) also may be considered as an additional element indicating testatrix' intention for the personal estate to be used in discharge of the pecuniary legacies.

 The exact nature of testatrix' clear intention is not subject to question. More than ample funds were on hand to pay all bequests. Neither did she intend to create a residuary estate until all debts, expenses of administration and legacies were discharged, for such is the definition of a residuary estate. 84 O.S.1951 § 1. And, where realty and personalty are mingled together in the residuary clause, without clear expression that the realty may not be subjected to payment of legacies, such fact clearly is indicative of an intention the residuary legatees are to take only that which is left after all charges and demands upon the estate have been satisfied. 69 C.J., Wills, Sec. 919, et seq.; In re Hartwig's Estate, 70 Idaho 77, 211 P.2d 399, quoting 57 Am.Jur., Wills, Sec. 1415, et seq.; annotation 42 A.L.R. 654.

However, testatrix' intention failed in one respect. Her intention to disinherit plaintiff, by giving him "$1.00 and no more", and pass the farm land into the residuary estate, failed by operation of law. Simler v. Wilson, supra. As the result of this failure, title to the farm vested in plaintiff by intestate succession, which circumstance provided the basis of this appeal by reason of the probate court charging the legacies against the plaintiff's land.

 The matters discussed above disclose the error which inhered in the probate court's order charging the pecuniary bequests against the intestate property. The statutory order of resort to property for payment of legacies is in opposition to the general rule that the personal estate is the primary fund out of which pecuniary legacies must be paid, and that the realty is not chargeable therefor unless such intention is expressly declared, or is fairly deducible from the will. And, it is unnecessary to consider the effect of mingling realty and personalty in the residuary clause, as relates to charging pecuniary legacies against residuary estate, when the personal estate is insufficient. Neither are we confronted at this time with the need for determining questions which might arise between heirs and residuary legatees under subdivisions 2 and 3 of this statute.

We are of the opinion that consideration of the terms of the will, testatrix' knowledge and understanding of her own affairs and the extent of her personal estate unalterably establish the conclusion that it was her intention the pecuniary legacies should be paid from her personal estate, and that such clear intention constituted an appropriation of personal property for payment of these legacies.

Undoubtedly, had the attempted residuary devise not failed, all of the charges against the estate would have been discharged out of the personal estate. Thomas v. Kunkel, 170 Okl. 100, 38 P.2d 527. And, in the event this source failed, resort would have been to the residuary estate. Because plaintiff acquired the land by inheritance and the will made no direct provision for payment of debts, costs of administration, etc., the statute required such items to be charged against the intestate property, under subdivision 2 of section 3. But, we are cited to no rule or precedent which requires this court to ignore testamentary intent in order to apply a related statute to the same extent. Such action not only would be violative of statute, 84 O.S.

1951 § 151, but would require this court to write a new will. This we decline to do.

The judgment is affirmed in part, but reversed as to application of section 4(2) supra, and remanded to the trial court for further proceedings in accordance with the views herein expressed.

WELCH, C. J., and DAVISON, HALLEY, JOHNSON, WILLIAMS, BLACKBIRD and JACKSON, JJ., concur.